Filed 5/19/22  P. v. Wright CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OCIE WRIGHT,<br><br>    Defendant and Appellant. | D078472<br><br><br><br>(Super. Ct. No. SCN171591) |


APPEAL from an order of the Superior Court of San Diego County, Harry M. Elias, Judge.  Affirmed.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, A. Natasha Cortina, Acting Assistant Attorney General, Melissa Mandel, Alan L. Amann and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.


Ocie Wright, who pled guilty to first degree murder in 2005 based on a theory of felony murder, appeals from the trial court's denial of his petition

for resentencing pursuant to Penal Code section 1170.95.[1]  After holding an evidentiary hearing, the trial court ruled that Wright was not entitled to relief because the People proved beyond a reasonable doubt that Wright was the actual killer.

Wright contends (1) the trial court erred in appointing a deputy primary public defender to represent Wright in connection with the petition for resentencing because the San Diego County Public Defender's Office declared a conflict of interest and was removed from representing Wright in 2004 during the proceedings on his underlying murder conviction; (2) insufficient evidence supports the trial court's determination that Wright was the actual killer; (3) the trial court prejudicially erred in considering the content of the probation officer's report from 2006 when ruling on the petition for resentencing; and (4) the petition for resentencing should have been granted because the record contains insufficient evidence to support a finding of causation necessary for a murder conviction.

We conclude that Wright's arguments lack merit, and we accordingly affirm the order denying the petition for resentencing.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Wright's Conviction for First Degree Murder on a Theory of Felony Murder Committed During a Robbery*

On October 13, 2003, John D. was assaulted during a robbery in his catering business and sustained significant injuries to his head and neck.[2]

---

[1]  Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]  We base our factual description on the preliminary hearing transcript, which Wright identified as the factual basis for his guilty plea, and which the

According to the medical examiner who later performed an autopsy of John D., due to John D.'s preexisting heart condition, the stress from the robbery and assault caused John D. to suffer a fatal heart attack within days of the incident.

Prior to John D.'s death, he was interviewed by law enforcement officers about the incident. John D. told officers that he was in his catering business talking to a Black male approximately 18 to 19 years old, whom he had not met before.[3] John D. believed the man was approximately 6'1" and had a thin or normal build. John D. and the man spoke to each other while sitting in chairs at John D.'s desk. The man stated that he was waiting for his girlfriend, who attended a school in the same strip mall as the catering business. The man asked John D. for something to drink and for some money to take his girlfriend to dinner. When John D. refused to give the man any money, the man's demeanor changed, and John D. became fearful. The last thing John D. remembered before the paramedics arrived to treat his injuries was going to the kitchen to get the man a drink. Money was missing from John D.'s fanny pack after the robbery.

Fernando S. was an employee at John D.'s catering business. At approximately 5:00 p.m. on the day of the robbery, Fernando S. saw John D. talking to a thin Black male, 18 to 22 years old, who was sitting in front of John D.'s desk. Fernando S. left for approximately half an hour. When he returned, he saw the same man running from the strip mall where the catering business was located. Fernando S. went inside the catering business

---

trial court considered as evidence during the evidentiary hearing on Wright's petition for resentencing.

[3] Wright was 21 years old during the robbery.

3

and found John D. on the floor crying for help, with blood pouring from his mouth.

On November 5, 2003, Fernando S. looked outside of the catering business and saw the man who was talking to John D. on the day of the robbery. Fernando S. notified a detective. Officers arrived and contacted Wright, who Fernando S. confirmed was the man he saw on the day of the robbery. Fernando S. also positively identified Wright in the courtroom during the preliminary hearing.[4]

Law enforcement officers seized Wright's shoes, which were found to have a blood stain containing John D.'s DNA. Wright's fingerprints were found on a chair in John D.'s catering business.

In December 2003, a complaint charged Wright with one count of murder (§ 187, subd. (a)) and one count of robbery (§ 211). The victim was identified as John D. In July 2004, after a preliminary hearing was held, an information realleged the murder and robbery counts, with the addition of a special-circumstance allegation for the murder count based on the commission of murder in the course of a robbery. (§ 190.2, subd. (a)(17) [the penalty for first degree murder is a sentence of life without parole or death if "[t]he murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit . . . [¶] [r]obbery."].)

On November 16, 2005, Wright pled guilty to first degree murder, and the People dismissed the balance of the charges against Wright. At the plea hearing, the prosecutor stated, "My office wanted to make it clear on the record that the first degree theory is a felony murder in that the murder

---

[4] After the robbery, neither John D. nor Fernando S. identified Wright when shown a photographic lineup containing Wright's photograph.

occurred during the course of [a] robbery." (See § 189, subd. (a) [all murder perpetrated in the commission of robbery is murder in the first degree].) Wright was sentenced to an indeterminate prison term of 25 years to life.

B.     *Wright's Petition for Resentencing*

In January 2019, Wright, in propria persona, filed a petition to vacate his murder conviction and to be resentenced under section 1170.95. The trial court appointed a deputy primary public defender to represent Wright. After briefing by counsel, the trial court issued an order to show cause, and an evidentiary hearing was set.

The trial court held an evidentiary hearing on December 15, 2020. At the request of defense counsel, the trial court considered a page from a police report that contained the following description of Wright's statements to police around the time of his arrest in 2003.

> "Wright essentially stated he knew nothing about any catering business or having a conversation with an elderly man inside a catering business. He was aware of the area because he would visit [a woman] at the school located there from time to time. Wright denied numerous times that he had any knowledge of an assault at a catering business. He said if his fingerprints were on a chair that was inside the business, the chair must have been outside the business at some point. He said he could not have been seen running away from the business because at the time his ankle was broken. Wright changed his story and admitted to being in the catering business and having a conversation with an old man. He said they were talking about a job for him and that his girlfriend went to the school next door. Wright said he had nothing to do with the assault but did not want to be a snitch. Wright said as he was sitting talking to the old man, a person he knows as "Train Smoke" (later identified as Raymond [B.] . . .) walked by outside the store. He and Train Smoke had a cigarette outside together. As Wright went back into the business, Train Smoke followed him in. Wright did not realize this until for no reason at all Train Smoke punched the old man in the face. Wright said he saw one punch and he immediately left the

5

business for fear of getting in trouble. He then said he saw two punches and left the business. Wright then explained that when the old man fell to the ground he asked for help and he went to help pick him up. At this time Train Smoke hit Wright for helping the man up . . . . Wright maintained that he had nothing to do with the assault and that he and Train Smoke did not talk about it prior to the attack."

Wright testified at the evidentiary hearing to confirm the statements described in the police report. According to Wright, on the day of the robbery he was talking to John D. about getting a job at the catering business, which was near the location where he often visited his girlfriend. At some point, while talking to John D., Wright went outside to smoke a cigarette and encountered a man he knew by the name of "Train," but later learned was named Raymond B. Wright went back inside to continue talking to John D., and Raymond B. followed him inside and hit John D. in the face several times. When Wright intervened to try to stop Raymond B. from hitting John D., Raymond B. hit Wright. Wright then ran from the scene without taking anything from John D. Wright testified that at the time of the robbery, he was 5'7" and 140 pounds, and Raymond B. was "about 6-1, maybe 210" pounds.

Wright testified that Raymond B. beat him up on two other occasions. Wright explained that he initially told police that he was not at the scene because he was afraid of Raymond B. and of the police. Wright testified that he did not agree or conspire with Raymond B. to rob John D., did not assist Raymond B. in doing so, and had no prior knowledge that Raymond B. was going to rob John D.

Defense counsel argued at the evidentiary hearing that there was nothing in the record to suggest that Wright was the actual killer rather than that he was merely present during an assault committed by Raymond B.

6

Among other things, defense counsel pointed to the preliminary hearing testimony of the criminalist who performed the DNA analysis of items taken from the scene and of Wright's shoe. That testimony showed that the police had obtained DNA samples from Raymond B. to determine whether he was a possible contributor to the DNA found on any of those items. Although Raymond B.'s DNA was not located on any of the relevant items, defense counsel argued that the criminalist's testimony suggested that the police had identified Raymond B. as a possible suspect, and the People had not presented evidence to establish, beyond a reasonable doubt, that Wright, rather than Raymond B., was the actual killer.

The trial court issued a written ruling on December 28, 2020, denying Wright's petition for resentencing. The trial court specified that, in addition to Wright's testimony, it had reviewed and considered (1) the reporter's transcripts of the preliminary hearing and Wright's change of plea hearing; (2) the change of plea form; (3) the probation officer's report prepared for Wright's sentencing hearing in 2006; and (4) the page of the police report that set forth Wright's statements to the police in 2003.

The trial court explained that Wright was not entitled to resentencing under section 1170.95 because he was convicted under a theory of felony murder that was still valid after the amendments to section 189. Specifically, the trial court found, beyond a reasonable doubt, that Wright was the actual killer of John D., because, among other things, there was no credible evidence that a second person, such as Raymond B., was involved in the robbery and assault. The trial court found Wright's statements regarding Raymond B.'s involvement to lack credibility.

Wright appeals from the order denying his petition for resentencing.

## II.

## DISCUSSION

A.    *Wright's Conflict of Interest Argument Lacks Merit*

Before turning to the merits of the trial court's ruling on the petition for resentencing, we consider Wright's contention that he is entitled to a reversal of the trial court's order and a remand for further proceedings because of a conflict of interest with his appointed counsel.

As background to this issue, during Wright's prosecution for murder, he was represented by a series of attorneys, three of whom withdrew based on an actual or possible conflict of interest.  First, a February 20, 2004 minute order relieving Wright's appointed attorney from the San Diego County Public Defender's Office states, "Public Defender declares a conflict.  Request to be relieved is granted.  Alternate Public Defender is appointed."  Next, a June 8, 2004 minute order states "[Alternate Public Defender] declares [a] conflict [and] is relieved.  Herb Weston for P.C.C. is appointed."  A June 15, 2005 minute order states that attorney Weston declared a potential conflict, and the court appointed "new PCC counsel."  The record does not provide any information about the source of the conflict for any of Wright's former attorneys.[5]

When the trial court appointed counsel to represent Wright in connection with his petition for resentencing in 2019, a minute order reflects

---

[5]    On January 3, 2022, Wright filed a request to augment the record with the transcript of the February 20, 2004 hearing during which the Public Defender's Office declared a conflict of interest.  In response to our direction that the clerk of the San Diego County Superior Court prepare and transmit to us the transcript of that hearing, we received a notice from the court reporter that, due to the passage of time, a transcript could no longer be produced.  We therefore deny the request to augment the record as moot.

that the trial court appointed a deputy primary public defender. The record does not reflect whether the trial court inquired about the previous conflict of interest when appointing counsel to represent Wright in 2019.[6]

For the first time on appeal, Wright argues that his constitutional right to conflict-free counsel was violated when the trial court appointed a deputy primary public defender to represent him in connection with his petition for resentencing.

"Both the United States Constitution and the California Constitution guarantee criminal defendants the right to the assistance of counsel unburdened by any conflicts of interest. [Citation.] Essentially, a claim of conflict of interest constitutes a form of ineffective assistance of counsel." (*People v. Perez* (2018) 4 Cal.5th 421, 435.)[7] To obtain reversal based on counsel's conflict of interest, "the defendant must demonstrate that (1) counsel labored under an actual conflict of interest that adversely affected

---

[6] The appointment of the deputy primary public defender to represent Wright in 2019 is not well documented in the appellate record. An undated minute order states that the public defender is appointed, including a notation stating "see order dated 1/31/19." No order dated January 31, 2019 appears in the record.

[7] We assume without deciding that, as Wright contends, case law discussing conflicts of interest for criminal defendants also applies to petitioners in section 1170.95 proceedings. We note that our Supreme Court has recently equated the right to counsel for a petitioner in a section 1170.95 proceeding with the right to counsel for a petitioner in a habeas proceeding, not with the right to counsel for a defendant in a criminal prosecution. (*People v. Lewis* (2021) 11 Cal.5th 952, 972-973 (*Lewis*) ["There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction. [Citations.] However, we have held that 'if a [habeas] petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns.' "].)

9

counsel's performance, and (2) absent counsel's deficiencies arising from the conflict, it is reasonably probable the result of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1010 (*Mai*).) " 'As a general proposition, such conflicts "embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or his own interests. [Citation.]" ' " (*People v. Doolin* (2009) 45 Cal.4th 390, 417 (*Doolin*).)

Further, "[w]hen the trial court knows, or reasonably should know, of the possibility of a conflict of interest on the part of defense counsel, it is required to make inquiry into the matter." (*People v. Bonin* (1989) 47 Cal.3d 808, 836.) However, " '[a] conviction will be reversed on the ground the trial court failed to satisfy its duty to inquire into a possible conflict, or to adequately respond to its inquiry, only where the defendant demonstrates that an actual conflict of interest existed, and that the conflict adversely affected counsel's performance.' " (*People v. Cornwell* (2005) 37 Cal.4th 50, 76 (*Cornwell*), italics omitted, disapproved on another ground in *Doolin, supra*, 45 Cal.4th at p. 421, fn. 22.)

Wright contends that the trial court's order denying his petition for resentencing should be reversed either because (1) an actual conflict of interest existed that adversely affected his counsel's performance; or (2) the trial court knew or should have known of the possibility of a conflict of interest but failed to inquire.

Wright's argument fails because both potential grounds for reversal require him to establish the existence of *an actual* conflict of interest. (*Mai, supra*, 57 Cal.4th at p. 1010; *Cornwell, supra*, 37 Cal.4th at p. 76.) However, the record does not support such a finding. As we have described, the only relevant information in the record is that in 2004, the San Diego County

10

Public Defender perceived that it had a conflict of interest that required it to be relieved as counsel. The record contains no information about the context in which that conflict arose. Wright speculates that the conflict may have been based on his identification of Raymond B. as the person who assaulted John D. Specifically, Wright speculates that the public defender may have been representing Raymond B. in 2004 and therefore could not also represent Wright. However, " '[s]peculative contentions of conflict of interest' " are insufficient to obtain a reversal. (*People v. Christian* (1996) 41 Cal.App.4th 986, 1001-1002; see also *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 310 [in analyzing a conflict of interest argument, the court rejected contentions "reflect[ing] pure speculation, unsupported by anything in the record"].) Because the record provides no information about the conflict of interest that may have existed in 2004, it is impossible for Wright to establish that any such conflict *still* existed 15 years later in 2019.[8]

Wright also cites case law stating that a criminal defendant may obtain *automatic* reversal of a conviction "where defense counsel is forced to [jointly] represent codefendants over his timely objection, unless the trial court has determined that there is no conflict." (*Mickens v. Taylor* (2002) 535 U.S. 162, 168 (*Mickens*), citing *Holloway v. Arkansas* (1978) 435 U.S. 475, 488 ["whenever a trial court improperly requires joint representation over timely objection reversal is automatic"].) He suggests that his situation is governed by that case law. However, Wright's argument fails for at least two reasons.

---

[8]    In his reply brief, Wright cites case law which he contends supports the principle that "[c]onflicts of interest do not simply expire of their own accord due to the passage of time." Here, however, because the record contains no indication whatsoever of the reason the public defender declared a conflict of interest in 2004, we are unable to determine whether, due to the nature of that conflict, it might still have existed in 2019.

First, there was no "timely objection" by either Wright or defense counsel. On the contrary, Wright raised the issue of a possible conflict of interest for the first time on appeal.[9] Second, even if there was a timely objection, the record does not show that the public defender was "forced to [jointly] represent codefendants." As we have explained, it is pure conjecture that the public defender was ever assigned to represent Raymond B., and even if it was, there is no evidence that Raymond B. was ever a codefendant of Wright.

In sum, Wright has not established that reversal is required based on any conflict of interest or the trial court's failure to inquire into any possible conflict of interest.

B.     *Substantial Evidence Supports the Trial Court's Finding That Wright Was the Actual Killer*

We next turn to Wright's contention that insufficient evidence supports the trial court's finding that the People proved Wright was the actual killer of John D. and thus was not entitled to resentencing under section 1170.95.

Effective January 1, 2019, Senate Bill No. 1437 (Stats. 2018, ch. 1015; (Senate Bill 1437)) substantially modified the law relating to murder,

---

[9]     Wright argues that despite his failure to timely raise a conflict of interest, he may nevertheless seek automatic reversal because he did not have *an opportunity* to do so. We reject the argument. Supreme Court case law makes clear that automatic reversal is warranted only when a meritorious objection to representation under a conflict of interest has *actually* been made by a criminal defendant and then overruled by the trial court. (*Mickens, supra*, 535 U.S. at p. 168.) Moreover, even if it was relevant whether Wright had an opportunity to object, Wright's argument fails because both he and defense counsel had ample opportunity to raise any purported conflict of interest in the trial court. The deputy primary public defender was appointed in January 2019. The hearing on the petition for resentencing was almost two years later on December 15, 2020. During that time period, Wright wrote letters to the trial court in which he asked questions about his legal representation.

12

eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)), and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e)(3); see *Lewis*, *supra*, 11 Cal.5th at p. 957.)[10] As relevant here, pursuant to section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine may bring a petition for resentencing if the person could not be convicted of murder after the changes to that crime enacted by Senate Bill 1437. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

When presented with a petition seeking relief under section 1170.95, the trial court must first determine whether the petitioner has made a prima facie case for relief. (§ 1170.95, subd. (c).) If the petitioner makes a prima facie case, the trial court must issue an order to show cause, followed by an evidentiary hearing to determine whether to recall the sentence and resentence the petitioner. (*Id.*, subds. (c), (d)(1).)

At the hearing to determine whether the petitioner is entitled to relief, the People have the burden to prove, beyond a reasonable doubt, "that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (d)(3).)[11] The trial court acts as "an independent

---

[10]    As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.; Stats. 2021, ch. 551, § 2), effective January 1, 2022, the ameliorative provisions of Senate Bill 1437 now also apply to attempted murder and voluntary manslaughter.

[11]    At the time of Wright's hearing in December 2020, the statute stated that it was the People's burden to prove, beyond a reasonable doubt, "that the petitioner is ineligible for resentencing." (Former § 1170.95, subd. (d)(3).)

13

factfinder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder." (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745.) "The question is whether the petitioner committed murder under a still-valid theory, and that is a factual question." (*People v. Clements* (2022) 75 Cal.App.5th 276, 294 (*Clements*).)

The version of the statute that existed at the time of Wright's evidentiary hearing stated that at the hearing held pursuant to section 1170.95, subdivision (d), "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (Former § 1170.95, subd. (d)(3).)[12]

In an appeal from an order denying a petition for resentencing after the trial court holds a hearing under section 1170.95, subdivision (d), "[w]e review the trial judge's fact finding for substantial evidence. [Citation.] We ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is

---

The statute also provided that an eligible petition must allege that "[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (Former § 1170.95, subd. (a)(3).)

[12] The statute now provides, "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Clements*, *supra*, 75 Cal.App.5th at p. 298.)

Because Wright was convicted under a felony murder theory, the factual issue the trial court considered at the evidentiary hearing was whether the People could establish, beyond a reasonable doubt, that Wright could be convicted of felony murder under the version of section 189 as amended by Senate Bill 1437. Under the amended version of section 189, a person is guilty of felony murder only if the person is either (1) the actual killer; (2) although not the actual killer, a person who intended to kill and assisted the actual killer in the commission of first degree murder; or (3) a major participant in the underlying felony who acted with reckless indifference to human life. (§ 189, subd. (e)(1)-(3).) Here, as we have explained, the trial court found that the People had proven that Wright was the actual killer and thus could be convicted of murder under the amended version of section 189.

Based on our review of the record, the finding that Wright was the actual killer is supported by substantial evidence. First, there is strong evidence that Wright was at John D.'s catering business at the time that John D. was assaulted. That evidence includes Wright's fingerprints on the chair in the catering business, John D.'s blood on Wright's shoe, and

15

Fernando S.'s positive identification of Wright. Next, it is significant that, other than Wright, all of the witnesses described only a single person interacting with John D. immediately before the robbery and assault. In his statements to police, John D. explained that a single person entered his catering business, asked for money, and then acted in a way that frightened John. D. Similarly, Fernando S. saw only a single person (i.e., Wright) speaking with John D. shortly before the robbery and running from the scene afterwards. Finally, as the trial court explained, although Wright stated to the police in 2003 and testified during the evidentiary hearing that Raymond B. was present during the robbery, the trial court specifically concluded that Wright lacked credibility. The trial court was entitled to make that credibility determination as the finder of fact, and it is not our role to question that determination on appeal. (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) Without credible testimony from Wright about Raymond B.'s involvement, the evidence overwhelmingly supports a finding that Wright was the actual killer because he was the only person present in the catering business with John D.

C.      *The Trial Court Properly Considered the Probation Officer's Report*

Wright contends that we should reverse the trial court's order denying the petition for resentencing because the trial court improperly considered the probation officer's report from Wright's 2006 sentencing in making its finding that Wright was the actual killer of John D.

Specifically, the trial court referenced the probation officer's report in its explanation of why it made a negative credibility determination against Wright and concluded, beyond a reasonable doubt, that he was the actual killer of John D.:

> "Other than the 3rd statement given by [Wright] to the detective,
> and his testimony given at the hearing, there is no evidence to

16

indicate that [Raymond B.] was ever at the scene. In [Wright's] testimony he denies that any robbery occurred and he was just a bystander to the incident. The Court finds that [Wright] is not credible in his testimony of the events. In his change of plea, [Wright] stated that he was entering the plea freely and voluntarily because he was, in truth and in fact, guilty. When questioned by the probation officer about the incident, he made no mention whatsoever of [Raymond B.] but, instead, expressed his remorse stating, 'that he was very sorry for it all.' [¶] Therefore, this court concludes that the evidence does prove beyond a reasonable doubt that [Wright] was the actual shooter."[13]

As we have noted, at the time of the evidentiary hearing in December 2020, section 1170.95, subdivision (d)(3) stated that "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (Former § 1170.95, subd. (d)(3).) Wright argues that the trial court erred in relying upon the probation officer's report because that document was neither offered by the People as evidence, nor was it part of the record of conviction. (See *People v. Trujillo* (2006) 40 Cal.4th 165, 180 [in determining whether a prior conviction qualifies as a strike the record of conviction does not include the probation officer's report]; but see *People v. Myles* (2021) 69 Cal.App.5th 688, 703-704 [concluding that *Trujillo*'s holding about the scope of the record of conviction for the purpose of the Three Strikes law does not apply to a proceeding under § 1170.95].)

Here, as we will explain, we need not decide whether the probation officer's report is part of the record of conviction as that term was used in the former version of section 1170.95, subdivision (d)(3). The People offered the

---

[13] The trial court mistakenly used the phrase "actual shooter" instead of "actual killer."

probation officer's report as evidence to meet their burden, and the trial court properly considered it on that basis.

Significantly, the People did not submit a memorandum of points and authorities or any documentary evidence in connection with the hearing held pursuant to section 1170.95, subdivision (d)(3). Instead, the People's briefing and the documentary evidence upon which they relied was set forth in their briefing at an *earlier* stage of the proceedings, when they filed two memoranda arguing that Wright had failed to make a prima facie case of eligibility for relief. Attached to those memoranda were three exhibits: (1) the probation officer's report;[14] (2) the reporter's transcript from the preliminary hearing; and (3) the reporter's transcript from the change of plea hearing. Although the People did not specifically refer to the probation officer's report at the evidentiary hearing held on December 15, 2020, the trial court reasonably understood the probation officer's report to be part of evidence that the People wanted the trial court to consider in determining whether the People had met their burden to establish that Wright was not entitled to relief in a hearing held pursuant to section 1170.95, subdivision (d)(3).

Moreover, the Evidence Code permitted the trial court to rely upon Wright's statements described in the probation officer's report. The trial court was entitled to take judicial notice of the probation officer's report pursuant to Evidence Code section 452, subdivision (d) because it was part of the superior court file. (See *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1096 [pursuant to Evid. Code, § 452, subd. (d), the trial court was authorized to

---

[14] Specifically, the People attached an unsigned copy of the probation officer's report but requested that the trial court take judicial notice of the filed copy of that report from its own files.

18

take judicial notice of the probation officer's report at a hearing to decide the petitioner's eligibility for resentencing under Proposition 47].) Further, to the extent that Wright's statements to the probation officer were offered for the truth of the matters asserted by Wright and therefore qualified as hearsay, the statements were properly admitted under an exception to the hearsay rule. Specifically, Wright's statements to the probation officer were admissible under Evidence Code section 1220 as a party admission. (Evid. Code, § 1220 ["Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party . . . ."].)

Wright contends that the trial court erred in considering the probation officer's report because the People's failure to expressly mention that document during the evidentiary hearing deprived him of the opportunity to object to it. We reject the argument. Prior to the issuance of the order to show cause, defense counsel extensively briefed the inadmissibility of the evidence that the People submitted along with their memoranda. That briefing argued, among other things, that the trial court was not permitted to rely on the content of the probation officer's report in deciding a petition brought under section 1170.95. Therefore, even though the People did not specifically refer to the probation officer's report at the evidentiary hearing, defense counsel was able to present an argument against its admissibility.

In sum, we reject Wright's argument that the trial court improperly considered the probation officer's report in finding that Wright was the actual killer.

D.    *The Issue of Causation Was Not Before the Trial Court During the Section 1170.95 Proceeding*

Finally, Wright argues that his petition for resentencing should be granted because the People did not prove beyond a reasonable doubt, at the

19

evidentiary hearing, that John D.'s death was caused by the robbery and assault. Wright relies on the basic principle that to prove murder, the People must prove causation, i.e., that the criminal act was a cause of the victim's death. (*People v. Concha* (2009) 47 Cal.4th 653, 660 ["[t]o satisfy the actus reus element of murder, an act of either the defendant or an accomplice must be the proximate cause of death" (italics omitted)]; *People v. Catlin* (2001) 26 Cal.4th 81, 155 [" 'So long as a victim's predisposing physical condition, regardless of its cause, is not the *only* substantial factor bringing about his death, that condition . . . in no way destroys the [defendant's] criminal responsibility for the death.' "].) According to Wright, because of John D.'s preexisting heart condition and the delay between the robbery and John D.'s fatal heart attack, the People cannot prove that any criminal act performed by Wright or any accomplice during the robbery and assault was the cause of John D.'s death. Thus, according to Wright, the People failed to prove during the section 1170.95 evidentiary hearing that he could be convicted of murder under the current law.

We reject this argument because it is beyond the scope of the issues properly presented in a proceeding to decide a petition brought under section 1170.95.[15] As our Supreme Court has observed, "[a] petitioner is entitled to relief under section 1170.95 only when he or she 'could not be convicted of first or second degree murder *because of* changes to section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subd. (a)(3).)" (*Lewis*, *supra*, 11 Cal.5th at p. 972, fn. 6, italics added [quoting the version of the statute in

---

[15] At the evidentiary hearing, defense counsel properly acknowledged that the issue of causation was not before the trial court. Despite this concession, Wright has raised the challenge to causation in his appellate briefing.

effect at the time of Wright's evidentiary hearing].)[16] Thus, "in a section 1170.95 petition, the trial judge isn't charged with holding a whole new trial on all the elements of murder. Instead, the parties will focus on evidence made relevant by the amendments to the substantive definition of murder." (*Clements, supra,* 75 Cal.App.5th at p. 298.) "The mere filing of a section 1170.95 petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence . . . ." (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.) "The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*People v. Allison* (2020) 55 Cal.App.5th 449, 461.)

The changes to sections 188 and 189 made effective January 1, 2019, did not do anything to change the long-standing rule that causation is required for a murder conviction. By virtue of Wright's guilty plea to first degree murder, the issue of whether the robbery and assault on John D. caused John D.'s death was already resolved. Accordingly, there is no basis on which Wright may now relitigate that issue.

---

16    The statute currently provides that a petitioner is entitled to relief if "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95. subd. (a)(3).)

## DISPOSITION

The order denying Wright's petition for resentencing pursuant to section 1170.95 is affirmed.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.