[No. S163811. Nov. 12, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
REYAS CONCHA et al., Defendants and Appellants.

654

COUNSEL

Maria Morrison, under appointment by the Supreme Court, for Defendant and Appellant Reyas Concha.

Diana M. Teran, under appointment by the Supreme Court, for Defendant and Appellant Julio Hernandez.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., Scott A. Taryle and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

Mitchell Keiter as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

CHIN, J.—Reyas Concha, Julio Hernandez, and Max Sanchez attempted to murder Jimmy Lee Harris. During the attempt, Harris responded in self-defense by stabbing Max Sanchez to death. Relying on the so-called provocative act murder doctrine, the jury convicted defendants Concha and Hernandez of first degree murder for the death of Sanchez. We granted review to determine whether a defendant may be liable for first degree murder when his accomplice is killed by the intended victim in the course of an attempted murder. We hold that a defendant may be convicted of first degree murder under these circumstances if the defendant personally acted willfully, deliberately, and with premeditation during the attempted murder.

## I. FACTS AND PROCEDURAL HISTORY

On July 14, 2005, Reyas Concha, Julio Hernandez, Max Sanchez, and a fourth unidentified man threatened to kill Jimmy Lee Harris during an apparent attempted robbery. Harris fled from the assailants and ran down the middle of a street in Los Angeles. The four men pursued Harris for over a quarter of a mile before cornering him against a fence. Harris attempted to scale the fence and one or more of the assailants began stabbing him. The stabbing continued for several seconds. Harris, realizing that his life was in danger, turned around and attempted to fight the four men off. Harris pulled a pocket knife from his pocket and "began to stab as many of them as [he] could." Harris then fled and found someone who called the police. Harris suffered severe injuries, but he survived. Sanchez died from the stab wounds that Harris inflicted during the attack.

The jury convicted defendants of attempted first degree murder of Harris. (Pen. Code, §§ 187, 664, subd. (a).)[1] Relying on the provocative act murder doctrine, the jury also convicted defendants of the first degree murder of Sanchez. (§ 187 subd. (a).) The jury found true that Hernandez personally used a deadly and dangerous weapon during both the attempted murder and the murder. (§ 12022, subd. (b)(1).) The jury specifically found true allegations that the attempted murder of Harris was committed willfully, deliberately, and with premeditation (§ 664, subd. (a)). However, the jury was not asked to find, and did not specifically find, that each defendant personally acted willfully, deliberately, and with premeditation during the attempt. Hernandez admitted that he had suffered a prior strike conviction. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).) The jury deadlocked as to each defendant on an attempted second degree robbery charge (§§ 211, 664) and the trial court granted the prosecution's motion to dismiss the attempted robbery charges.

The Court of Appeal affirmed the convictions. In an opinion by Justice Mosk, the majority held that defendants' first degree murder convictions for the death of their accomplice based on the provocative act doctrine were supported by the jury's finding that the attempted murder of the victim was willful, deliberate and premeditated. The majority reasoned that the murder convictions "were not based on a provocative act *implied* malice theory that would have required a finding of second degree murder. Instead, the convictions were based on defendants' *express* malice in attempting to kill Harris." The majority applied the doctrine of transferred intent to reach its conclusion that defendants' mental state in connection with the attempted murder made them guilty of Sanchez's murder in the first degree, reasoning as follows: "Section 189 expressly provides that a willful, deliberate, and premeditated killing is murder of the first degree. The jury found that defendants acted with malice, premeditation, and deliberation in attempting to murder Harris, and found that each committed at least one act in the course of attempted murder that was a proximate cause of Sanchez's killing. Thus, defendants' mental state—express malice, willfulness, deliberation, and premeditation—in connection with the attempted murder of Harris transferred to the killing of Sanchez, making them guilty of his murder in the first degree."

In a separate concurring opinion, Presiding Justice Turner concluded that the murder conviction should be reduced from first degree to second degree because the jury's express malice and premeditation finding with respect to the attempted murder count cannot be transferred to the provocative act murder of defendants' accomplice.

---

[1] All further statutory references are to the Penal Code.

We granted review limited to the following issue: "Did the trial court err in allowing the jury to return verdicts of first degree murder when the case was tried on a theory of provocative-act murder?"

## II. DISCUSSION

Defendants contend the provocative act murder doctrine limits a defendant's liability to second degree murder when the defendant's accomplice is killed by the victim during a willful, deliberate, and premeditated attempt to commit murder. We disagree.

■ Murder is the unlawful killing of a person with malice aforethought. (§ 187.) Murder includes both actus reus and mens rea elements. To satisfy the actus reus element of murder, an act of either the defendant *or an accomplice* must be the proximate cause of death. (*People v. Roberts* (1992) 2 Cal.4th 271, 320 [6 Cal.Rptr.2d 276, 826 P.2d 274] (*Roberts*); *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [108 Cal.Rptr.2d 188, 24 P.3d 1210] (*McCoy*).) For the crime of murder, as for any crime other than strict liability offenses, "there must exist a union, or joint operation of act and intent, or criminal negligence." (§ 20.) To satisfy the mens rea element of murder, the defendant must personally act with malice aforethought. (*McCoy, supra,* 25 Cal.4th at p. 1118.)

■ A defendant can be liable for the unlawful killings of both the intended victims and any unintended victims. " '[T]here is no requirement of an unlawful intent to kill *an intended victim.* The law speaks in terms of an unlawful intent to kill *a* person, not *the* person *intended to be killed.*' " (*People v. Bland* (2002) 28 Cal.4th 313, 323 [121 Cal.Rptr.2d 546, 48 P.3d 1107] (*Bland*), quoting *People v. Scott* (1996) 14 Cal.4th 544, 556 [59 Cal.Rptr.2d 178, 927 P.2d 288] (conc. opn. of Mosk, J.) (*Scott*).)

■ For example, a defendant is liable for both murder and attempted murder if he or an accomplice attempts to kill a specific person and instead kills a bystander. (*Scott, supra,* 14 Cal.4th at p. 546.) Similarly, a defendant is liable for two murders if, in the course of killing his intended victim, he or an accomplice also kills a bystander. (*Bland, supra,* 28 Cal.4th at pp. 325–326.) In short, a defendant may be liable for murder when he possesses the appropriate mens rea and either the defendant or an accomplice causes an unlawful death. As we explained in *Bland,* " '[a] *mens rea* . . . is an elastic thing of unlimited supply. . . . It may combine with a single *actus reus* to make a single crime. It may as readily combine with a hundred *acti rei,* intended and unintended, to make a hundred crimes . . . . Unforeseen circumstances may multiply the criminal acts for which the criminal agent is responsible. A single state of mind, however, will control the fact of guilt and

the level of guilt of them all.' " (*Id.* at p. 325, quoting *Harvey v. State* (1996) 111 Md.App. 401 [681 A.2d 628, 637].)

■ However, the defendant is liable only for those unlawful killings proximately caused by the acts of the defendant or his accomplice. (*Roberts, supra,* 2 Cal.4th at p. 320.) "In all homicide cases in which the conduct of an intermediary is the actual cause of death, the defendant's liability will depend on whether it can be demonstrated that his own conduct *proximately caused* the victim's death . . . ." (*People v. Cervantes* (2001) 26 Cal.4th 860, 872–873, fn. 15 [111 Cal.Rptr.2d 148, 29 P.3d 225] (*Cervantes*).) "[I]f the eventual victim's death is not the natural and probable consequence of a defendant's act, then liability cannot attach." (*Roberts, supra,* 2 Cal.4th at p. 321.) Our prior decisions make clear that, where the defendant perpetrates an inherently dangerous felony, the victim's self-defensive killing is a natural and probable response. (See, e.g., *People v. Gilbert* (1965) 63 Cal.2d 690, 705 [47 Cal.Rptr. 909, 408 P.2d 365] (*Gilbert*); *People v. Caldwell* (1984) 36 Cal.3d 210, 220–222 [203 Cal.Rptr. 433, 681 P.2d 274] (*Caldwell*).)

In the present case, although it is apparent that defendants Concha and Hernandez did not intend to kill their accomplice, they had the intent to kill *a* person when they attacked their intended victim, and therefore are guilty of murder as to any killing either of them proximately caused while acting together pursuant to their intent to kill.

■ Once liability for murder "is otherwise established, section 189 may be invoked to determine its degree." (*Gilbert, supra,* 63 Cal.2d at p. 705; see also *Caldwell, supra,* 36 Cal.3d at p. 217, fn. 2, quoting *Gilbert* with approval; *Cervantes, supra,* 26 Cal.4th at pp. 872–873, fn. 15 ["If proximate causation is established, the defendant's level of culpability for the homicide in turn will vary in accordance with his criminal intent."].) Section 189 states that if an unlawful killing is "willful, deliberate, and premeditated," or is perpetrated by means of "poison, lying in wait, torture . . . , discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death," using specific types of weapons, destructive devices, explosives, or ammunition, or in the perpetration of certain enumerated felonies,[2] it is murder of the first degree. (§ 189.) "All other kinds of

---

[2] We note that the felony-murder rule cannot support liability for first degree murder under the facts presented here for two reasons. First, the felony-murder rule can be invoked only when the defendant or an accomplice actually commits the killing. (*People v. Washington* (1965) 62 Cal.2d 777, 781 [44 Cal.Rptr. 442, 402 P.2d 130] (*Washington*) ["Section 189 requires that the felon or his accomplice commit the killing, for if he does not, the killing is not committed to perpetrate the felony."]; *People v. Antick* (1975) 15 Cal.3d 79, 90 [123 Cal.Rptr. 475, 539 P.2d 43].) Second, attempted murder is not one of the enumerated felonies in section 189.

murders are of the second degree." (*Ibid.*) Therefore, "assuming legal causation, a person maliciously intending to kill is guilty of the murder of all persons actually killed. If the intent is premeditated, the murder or murders are first degree." (*Bland, supra,* 28 Cal.4th at pp. 323–324, fn. omitted.) While joint participants involved in proximately causing a murder " 'are tied to a "single and common *actus reus,*" "the individual *mentes reae* or levels of guilt of the joint participants are permitted to float free and are not tied to each other in any way. If their *mentes reae* are different, their independent levels of guilt . . . will necessarily be different as well." ' " (Dressler, Understanding Criminal Law (2d ed. 1995) § 30.06[C], p. 450, fns. omitted, as quoted with approval in *McCoy, supra,* 25 Cal.4th at pp. 1118–1119.)

■ Therefore, "[i]f a jury finds that a defendant proximately caused a death, either solely through his own conduct or through the actions of others where his conduct is shown to be a substantial concurrent cause of the death, and the defendant did so with a premeditated intent to kill, then the defendant is guilty of *first degree* murder." (*People v. Sanchez* (2001) 26 Cal.4th 834, 849 [111 Cal.Rptr.2d 129, 29 P.3d 209] (*Sanchez*).)

■ Defendants contend provocative act murder is limited to "second degree as a matter of law," impliedly arguing that provocative act murder is an independent crime with a fixed level of liability. However, that is not the case. While each of our prior decisions dealing with provocative act murder found the defendant liable for second degree murder, a statement that provocative act murder *is* second degree murder is not universally correct. In our prior cases, malice was *implied* from the provocative act. However, as here, when malice is *express* because the defendant possessed a specific intent to kill, first degree murder liability may be proper if the charged defendant personally acted willfully, deliberately, and with premeditation.

One of this court's earliest statements regarding provocative act murder is found in *Gilbert, supra,* 63 Cal.2d 690. "When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life. Thus, the victim's self-defensive killing or the police officer's killing in the performance of his duty cannot be considered an independent intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice." (*Id.* at pp. 704–705.) We later stated that, "[i]n the classic provocative act murder prosecution, *malice is implied* from the provocative act, and the resulting

crime is murder in the second degree." (*Cervantes, supra,* 26 Cal.4th at pp. 872–873, fn. 15; see also *Washington, supra,* 62 Cal.2d at p. 782 [in a typical case of provocative act murder, malice is implied from the defendant's participation in " 'an act that involves a high degree of probability that it will result in death' "].)

■ This statement regarding a classic provocative act murder prosecution is often, but not always, true. Provocative act murder is not an independent crime with a fixed level of liability. (*Cervantes, supra,* 26 Cal.4th at p. 867, fn. 10.) It is simply a type of murder. The words "provocative act murder" are merely shorthand used "for that category of intervening-act causation cases in which, during commission of a crime, the intermediary (i.e., a police officer or crime victim) is provoked by the defendant's conduct into [a response that results] in someone's death." (*Id.* at pp. 872–873, fn. 15.)

■ *Gilbert* makes it clear that liability for provocative act murder is not limited to second degree murder. "[W]hen a murder is otherwise established, section 189 may be invoked to determine its degree." (*Gilbert, supra,* 63 Cal.2d at p. 705.) Consequently, the provocative act murder doctrine does not limit a defendant's liability to second degree murder where a defendant's accomplice is killed by the victim or a police officer in the course of an attempted murder. As discussed above, a defendant's culpability for an unlawful killing is commensurate with his mens rea. (*Cervantes, supra,* 26 Cal.4th at p. 872, fn. 15.) As we explained in *Cervantes,* "whether or not a defendant's unlawful conduct is 'provocative' in the literal sense, when it proximately causes an intermediary to kill through a dependent intervening act, the defendant's liability for the homicide will be fixed in accordance with his criminal mens rea. If the defendant proximately causes a homicide through the acts of an intermediary and does so with malice and premeditation, his crime will be murder in the first degree . . . ." (*Id.* at p. 873, fn. 15.) Similarly, where malice is merely implied from the defendant's conduct, the defendant is liable only for second degree murder. Finally, "[i]f the defendant proximately causes a homicide through the acts of an intermediary and does so without malice, his crime will be manslaughter . . . ." (*Ibid.*)

■ To summarize, a defendant is liable for murder when the actus reus and mens rea elements of murder are satisfied. The defendant or an accomplice must proximately cause an unlawful death, and the defendant must personally act with malice. Once liability for murder is established in a provocative act murder case or in any other murder case, the degree of murder liability is determined by examining the defendant's personal mens rea and applying section 189. Where the individual defendant personally intends to kill and acts with that intent willfully, deliberately, and with premeditation, the defendant may be liable for first degree murder for each

unlawful killing proximately caused by his or her acts, including a provocative act murder. Where malice is implied from the defendant's conduct or where the defendant did not personally act willfully, deliberately, and with premeditation, the defendant cannot be held liable for first degree murder.

■ We note that the doctrine of transferred intent occasionally has been used to explain a defendant's liability in provocative act murder cases. Under the "classic formulation" of the transferred intent doctrine, where a defendant intends to kill a victim but misses and instead kills a bystander, the intent to kill the intended victim is imputed to the resulting death of the bystander and the defendant is liable for murder. (*People v. Shabazz* (2006) 38 Cal.4th 55, 62 [40 Cal.Rptr.3d 750, 130 P.3d 519]; see also 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 13, pp. 215–216.) However, under the transferred intent doctrine, the defendant's intent is not actually transferred from the intended victim to the unintended victim. "Rather, as applied here, [the transferred intent doctrine] connotes a *policy*—that a defendant who shoots at an intended victim with intent to kill but misses and hits a bystander instead should be subject to the same criminal liability that would have been imposed had he hit his intended mark." (*Scott, supra*, 14 Cal.4th at p. 551.) " 'For purposes of applying the rule of transferred intent, it does not matter whether defendant himself fired the fatal shot or instead induced or provoked another to do so; in either situation, defendant's culpable mental state is determined as if the person harmed were the person defendant meant to harm.' " (*Sanchez, supra*, 26 Cal.4th at pp. 850–851, fn. 9, quoting *id.* at p. 856 (conc. opn. of Kennard, J.).)

While the transferred intent doctrine would reach the same result as the proximate cause analysis adopted above if the defendant proximately caused the death of someone other than his intended victim and the jury found that the defendant personally acted during an attempted murder willfully, deliberately, and with premeditation, we choose not to rely on the transferred intent doctrine in our analysis of provocative act murder. We have recognized that the transferred intent doctrine has the potential to cause "conceptual difficulties" (*Bland, supra*, 28 Cal.4th at p. 317), when applied to some factual scenarios because, notwithstanding its name, "[i]t does not denote an actual transfer of intent from the intended to the unintended victim." (1 Witkin & Epstein, Cal. Criminal Law, *supra*, Elements, § 15, p. 218, citing *Scott, supra*, 14 Cal.4th at p. 550.)[3] Here, although the traditional transferred intent formulation and a proximate causation analysis reach the same result, we

---

[3] As we noted in *Bland*, "[t]he term 'transferred intent,' if taken literally, is underinclusive. In his concurring opinion in *Scott*, Justice Mosk suggested that the term 'transferred malice' might be more accurate (*Scott, supra*, 14 Cal.4th at p. 554 (conc. opn. of Mosk, J.)), but even that term is too narrow. Someone who premeditates a killing but kills the wrong person is guilty of a premeditated, not just intentional, murder. (*People v. Sanchez*[, *supra*,] 26 Cal.4th

shall rely on a proximate cause analysis to explain the general basis for criminal liability and, in a provocative act murder case, the available degrees of murder.

We next address the need for the jury to consider whether a defendant *personally* acted willfully, deliberately, and with premeditation during an attempted murder that proximately caused the death of an unintended person (a provocative act murder) when two or more defendants are charged with joint participation in the attempted murder.

 As discussed above, a defendant charged with murder or attempted murder can be held vicariously liable for the actus reus of an accomplice, but, for murder, a defendant cannot be held vicariously liable for the mens rea of an accomplice. (*McCoy, supra,* 25 Cal.4th at p. 1118.) The same is not true for an attempted murder that is willful, deliberate, and premeditated. For such an attempted murder, although each defendant must have the intent to kill, a defendant may be vicariously liable for the premeditated and deliberate component of the mens rea of an accomplice. (*People v. Lee* (2003) 31 Cal.4th 613, 626 [3 Cal.Rptr.3d 402, 74 P.3d 176].)

 Subdivision (a) of section 664 provides that, as a general matter, a person guilty of attempted murder must be punished by imprisonment for five, seven or nine years. It goes on to provide, that "if the [murder] attempted is willful, deliberate, and premeditated . . . , the person guilty of that attempt shall be punished by imprisonment . . . for life . . . . The additional term provided . . . for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found to be true by the trier of fact." (*Ibid.*) In *People v. Lee, supra,* 31 Cal.4th 613, we construed section 664, subdivision (a), as requiring "only a certain quality characterizing the crime itself, that is that the attempted murder was willful, deliberate and premeditated," and we declined the "defendants' invitation to *insert* a personal-mental-state requirement not imposed by section 664(a)." (31 Cal.4th at p. 626.) Therefore, to be liable under section 664, subdivision (a), all that is necessary is that the defendant or his accomplice attempted a murder, that both intended to kill, and that either the defendant or an accomplice acted with willfulness, deliberation, and premeditation. (*Lee,* at p. 626.) Accordingly, the trial court instructed the jury on the premeditation allegation for the attempted murder charge, pursuant to CALCRIM No. 601, as follows: "If you find the defendant guilty of attempted murder, you must then decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with

834, 850–851 . . . .) A more accurate designation might be 'transferred mental state.' " (*Bland, supra,* 28 Cal.4th at p. 319, fn. 1.)

deliberation and premeditation. The defendant and/or a principal acted willfully if he intended to kill when he acted. The defendant and/or principal deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant and/or principal premeditated if he decided to kill before acting. The attempted murder was done willfully and with deliberation and premeditation if either the defendant or a principal or both of them acted with that state of mind." In turn, the court asked the jury to find whether an attempted murder "was committed willfully, deliberately, and with premeditation within the meaning of Penal Code Section 664(a)."

However, with regard to the mens rea required for a first degree murder conviction, the jury must find that the individual defendant *personally* acted willfully, and with deliberation and premeditation during the attempted murder. (*McCoy*, *supra*, 25 Cal.4th at p. 1118.) Consequently, it appears defendants are correct that the trial court inadequately instructed the jury on first degree murder for Sanchez's death because the instructions failed to require that the jury resolve whether each defendant acted willfully, deliberately, and with premeditation during the course of the attempted murder of Harris.

█ Although we have concluded that the trial court did not err by allowing the jury to consider returning a verdict of first degree murder against defendants for the death of their accomplice under the provocative act doctrine, it appears that the trial court did err when instructing on first degree murder, as opposed to attempted murder, by not providing an instruction that explained that for a defendant to be found guilty of *first degree murder*, he *personally* had to have acted willfully, deliberately, and with premeditation when he committed the attempted murder. (*McCoy*, *supra*, 25 Cal.4th at p. 1118.) The Court of Appeal in its opinion did not focus on this point. We therefore remand the matter for the Court of Appeal to consider whether this instructional error was prejudicial.

## III. DISPOSITION

We agree with the Court of Appeal that first degree murder liability can be established in a provocative act murder case. However, under our decision in *McCoy*, *supra*, 25 Cal.4th 1111, the instructions on first degree murder for the death of Sanchez failed to require the jury to find whether each defendant

personally acted willfully, deliberately, and with premeditation during the course of the attempted murder of Harris. Accordingly, we reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.