Filed 7/29/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>HO THAI NGUYEN,<br><br>     Defendant and Appellant. | H050103<br>(Santa Clara County<br>Super. Ct. No. 191354)<br><br>**ORDER MODIFYING OPINION**<br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:

The court orders that the opinion filed July 11, 2024, be modified as follows:

On page 17, on the fourth line from the top of the page, insert " held, " immediately after "Court".

There is no change in the judgment.

_____
Greenwood, P. J.


_____
Grover, J.


_____
Lie, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HO THAI NGUYEN,<br><br>    Defendant and Appellant. | H050103<br>(Santa Clara County<br>Super. Ct. No. 191354) |

    A jury convicted Ho Thai Nguyen on three counts of first degree murder for the deaths of three persons shot by a group of gunmen at a café in 1995. In 2022, Nguyen petitioned for resentencing under Penal Code former section 1170.95.[1] Based on the jury instructions and verdicts, the trial court found Nguyen was not one of the shooters and concluded the jury must have convicted him as a direct aider and abettor. The trial court denied the petition for failure to make a prima facie case for relief.

    Nguyen appeals from the denial of his petition. He argues that because the jury instructions on conspiracy liability made him liable for acts committed by coconspirators, the jury could have convicted him for murders the coconspirators committed, and the jury was not required to find he had the intent to kill the victims of those murders. He contends this constitutes a prima facie case for relief

---

[1] Undesignated statutory references are to the Penal Code. Effective January 1, 2022, the Legislature amended section 1170.95. (Stats. 2021, ch. 551, § 2.) The Legislature later renumbered section 1170.95 as 1172.6 with no change to the text of the statute. (Stats. 2022, ch. 58, § 10, eff. June 30, 2022.)

under section 1172.6 because the jury was allowed to impute malice to him based solely on his participation in a crime.

We reject this claim. The jury instructions set forth only one theory of conspiracy liability: a conspiracy to commit first degree murder—in this case, deliberate, premeditated murder. To convict Nguyen of murder under that theory, the jury had to find he personally harbored express malice—the intent to kill unlawfully. Consistent with current law, the jury only had to find he had the intent to unlawfully kill *a person*, not a specific person. (§ 188, subd. (a)(1).) And the finding of intent to kill would not be "used up" once the jury relied on it for any single murder conviction. (*People v. Scott* (1996) 14 Cal.4th 544, 546.) Thus, even if the jury did not find Nguyen specifically intended to kill each of the three victims, the jury could convict him of all three murders based on a finding he personally harbored express malice. Looking to the plain language of section 1172.6, we conclude this theory of liability would not constitute a "theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1).)

Nguyen does not assert any other grounds supporting a prima facie case for relief. Accordingly, we affirm the trial court's denial of the petition for resentencing.

## I. BACKGROUND

The charges arose from a shooting at a café in 1995. A group of men with firearms entered the café around 2:00 a.m. and opened fire, killing three men. The prosecution charged Nguyen and four codefendants with three counts of murder.

## A.  *Facts of the Offenses*[2]

On the evening of March 10, 1995, a group of current or former members of a gang called "Asian Boys" went to a nightclub in San Jose.  The group included Nguyen and two of his codefendants, among others.  While they were at the nightclub, one of the group's members was shot in the stomach.  The member survived and blamed the shooting on a rival gang called "Asians Kicking Ass."  Later that evening, Nguyen and other members of the group gathered at a codefendant's house to discuss retaliation.

Around 2:00 a.m., Nguyen and other members of the group went to the May Tiem Café, which had a predominantly Asian clientele.  Nguyen entered the café and asked to use the pay phone.  The manager was preparing to close the café, but there were still people inside, including three men in a video game room.  The manager allowed Nguyen to make a phone call and escorted him to the exit, where the manager saw two or three other young men standing outside.

Six armed men then entered the café, went to the video game room, and opened fire.  Three men in the video game room were fatally shot.  Four security cameras—two inside the café and two outside—recorded the incident on videotape.

## B.  *Procedural History*

### 1.  *The Underlying Prosecution*

The prosecution charged Nguyen and four codefendants with three counts of murder with multiple murder special circumstances alleged on each count.  The

---

[2] The facts are taken from the nonpublished opinion on direct appeal. (*People v. Nguyen et al.*, (Aug. 30, 2001, H019770) [nonpub. opn.].)  We granted Nguyen's request to take judicial notice of the record in that matter, including the clerk's transcript and reporters' transcripts of the trial proceedings.  We summarize the facts to provide context and background and do not rely on them in deciding the merits of this appeal.

prosecution further alleged three of the codefendants personally used firearms in the commission of each murder. Nguyen faced no firearm allegations.

A jury trial was held in 1998. The trial court instructed the jury that a willful, deliberate, and premeditated killing with express malice aforethought is murder in the first degree. The court did not instruct the jury on felony murder, and the court gave no instructions that would allow the jury to find a defendant vicariously liable for murder as a natural and probable consequence of aiding and abetting some other offense.

The trial court instructed the jury on an uncharged conspiracy theory of liability based on CALJIC Nos. 6.10.5 and 6.11.[3] In relevant part, the court instructed the jury, "A conspiracy is an agreement between two or more persons with specific intent to commit the crime of first degree murder, and with the further specific intent to commit that crime, followed by an overt act committed in the state by one or more of the parties for the purpose of accomplishing the object of the agreement. [. . . ¶ . . .] Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if that act or declaration is in furtherance of the object of the conspiracy. [¶] The act of one conspirator pursuant to or in furtherance of the common design or conspiracy is the act of all conspirators."

The trial court also instructed the jury on direct liability as an aider and abettor based on CALJIC Nos. 3.00 and 3.01. As relevant here, the court instructed the jury that liability for aiding and abetting requires that the defendant acted "with knowledge of the unlawful purpose of the perpetrator," and "with the intent or purpose of committing or encouraging or facilitating the commission of the crime."

---

[3] All citations to CALJIC instructions refer to the January 1997 versions.

4

In closing argument, the prosecutor argued the security camera videotapes showed there was a conspiracy to commit first degree murder, and that statements to the police by witnesses and defendants proved it was planned earlier in the evening as retaliation for the nightclub shooting. The prosecutor argued the videotapes showed Nguyen went into the café to scout it out, and that Nguyen gave a statement to the police admitting he saw the three victims in the video game room. The prosecutor argued Nguyen was also guilty as an aider and abettor who acted with the intent to kill. The prosecutor asserted that "despite not being a triggerman, despite not having a gun," Nguyen bore the most responsibility for the murders by scouting out the café and picking out the victims.

The jury found Nguyen guilty of first degree murder on all three counts, with a true finding on a multiple murder special circumstance. The jury found two of the codefendants guilty of first degree murder on all three counts, with true findings on the firearm allegations and a multiple murder special circumstance. The jury found a third codefendant guilty of second degree murder on all three counts, with true findings on the firearm enhancements. As to the fourth codefendant, the jury deadlocked and the trial court declared a mistrial.

The trial court sentenced Nguyen to life in prison without the possibility of parole. Nguyen appealed, and this Court affirmed the judgment.

### 2. *Trial Court Proceedings on the Petition for Resentencing*

In March 2022, Nguyen filed a pro se petition for resentencing under former section 1170.95, and the trial court appointed counsel to represent him. The court held a hearing at which the prosecutor orally moved to dismiss the petition for failure to state a prima facie case, and defense counsel submitted without argument.

In a written order, the trial court denied the petition on the ground Nguyen had failed to make a prima facie showing he was entitled to relief. The trial court

5

stated that while the verdicts indicated that Nguyen was not a shooter, the jury instructions "demonstrate as a matter of law that Petitioner cannot make a prima facie case showing that he is entitled to relief because he was convicted as a direct aider and abettor."[4]  The court reasoned that Nguyen could not have been convicted of first degree murder under a felony murder theory or the doctrine of natural and probable consequences because the jury was not instructed as to either. The court stated that "as to Petitioner's potential liability for murder, the jury was *only* instructed with direct aiding and abetting principles."  The trial court concluded the jury necessarily found Nguyen guilty based on his own actions and mental state as a direct aider and abettor of murder.

## II.  DISCUSSION

Nguyen contends the trial court erred in denying his petition at the prima facie stage because the jury could have convicted him under a conspiracy theory of liability that imputed malice to him based solely on his participation in a crime. The Attorney General counters that Nguyen failed to make a prima facie showing for relief because any reliance on a theory of conspiracy liability required the jury to find that he acted with an intent to kill.

### A.  *Legal Principles*

"Senate Bill [No.] 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § l, subd. (f)

---

[4] The Attorney General does not dispute the trial court's conclusion that the jury's verdicts showed Nguyen was not a shooter.  We will treat this as a concession that the record of conviction conclusively establishes Nguyen was not a shooter.  In any event, this fact does not affect our resolution of this appeal.

[(Senate Bill 1437)].)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*), superseded by statute on another ground.) This change in law resulted in three amendments to the Penal Code. First, as amended by Senate Bill 1437, section 188, subdivision (a)(3) was added to require that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought." (§ 188, subd. (a)(3).) That subdivision further states, "Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Ibid.*) Second, Senate Bill 1437 added section 189, subdivision (e), limiting liability for felony murder. (Stats. 2018, ch. 1015, § 3.)

Third, Senate Bill 1437 "created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) Under section 1172.6, the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met. (*Ibid.*) When the trial court receives a petition "containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Ibid.*, citing *People v. Lewis* (2021) 11 Cal.5th 952, 970-972 (*Lewis*); § 1172.6, subd. (c).)

Section 1172.6, subdivision (a) sets forth three conditions the petitioner must show to establish his or her eligibility for relief. As relevant here, Nguyen was required to show (1) that the information allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person

7

based solely on that person's participation in a crime; (2) that he was convicted of murder following a trial; and (3) that he could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019. (§ 1172.6, subds. (a)(1), (a)(2), & (a)(3).)

In making the prima facie determination, the court may rely on the record of conviction, including the jury instructions and verdict forms. (*Lewis*, *supra*, 11 Cal.5th at pp. 970-972.) However, the prima facie inquiry is limited; at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at pp. 971-972, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) In evaluating how a jury would interpret the court's jury instructions, we consider the instructions together as a whole, because we presume jurors understand and correlate all the instructions. (*People v. Burton* (2018) 29 Cal.App.5th 917, 925.) We also presume the jury followed the court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

"We independently review a trial court's determination on whether a petitioner has made a prima facie showing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

**B.  *The Record of Conviction Establishes That Nguyen is Ineligible for Relief***

Nguyen does not argue he was convicted under a felony murder theory or the doctrine of natural and probable consequences. He contends instead that the jury instructions for conspiracy liability allowed the jury to convict him by imputing malice to him for one or more of the murder convictions. The Attorney General contends the jury instructions and verdicts show the jury did not impute malice to Nguyen under any available theory because the jury was required to find he acted with the intent to kill to convict him of first degree murder.

8

The Attorney General is correct that the jury instructions, together with the verdicts, imply the jury found Nguyen personally harbored an intent to kill. The trial court's instructions on first degree murder required the jury to find "that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation . . . ." The jury was not instructed on any other theory of first degree murder, so there was no way the jury could have convicted Nguyen of first degree murder without finding he harbored express malice.

Nguyen argues nonetheless that the jury could have found that one or more of the murders was committed "independently" by his coconspirators solely as an act in furtherance of the conspiracy, not as the object of the conspiracy. Nguyen points to the instruction that told the jury, "Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if that act or declaration is in furtherance of the object of the conspiracy." Nguyen posits that if the jury found the object of the conspiracy was to kill only one of the victims, but Nguyen's coconspirators independently killed the other two victims solely as acts in furtherance of the conspiracy, the jury instructions allowed the jury to convict him of those two murders by imputing malice to him. Or, Nguyen argues, the jury could have found the object of the conspiracy was to kill a fourth person—not one of the three deceased victims—and that all three murders were committed independently by Nguyen's coconspirators solely as acts in furtherance of the conspiracy.

These arguments elide the point above—that the jury's verdicts together with the instructions necessarily imply the jury found Nguyen harbored express malice. That is true even if the jury relied on the conspiracy instructions. The instructions defined "conspiracy" as "an agreement between two or more persons with specific intent to commit the crime of first degree murder, and with the

9

further specific intent to commit that crime, . . . ." The only kind of conspiracy the jury could find under this instruction was a conspiracy to commit first degree murder. The trial court further instructed the jury, "As to each defendant, you must determine whether he was a conspirator by deciding whether he willfully, intentionally and knowingly joined with any other or others in the alleged conspiracy." Thus, to convict Nguyen under a conspiracy theory, the jury necessarily had to find he had the specific intent to commit first degree murder. And because the jury was only instructed on a premeditation theory of first degree murder, that necessarily required the jury to find Nguyen personally harbored express malice. (See *People v. Medrano* (2021) 68 Cal.App.5th 177, 186 (*Medrano*) [petitioner's conviction for conspiracy to commit first degree murder rendered him ineligible for relief under section 1170.95 as a matter of law]; see also *People v. Whitson* (2022) 79 Cal.App.5th 22, 32 (*Whitson*) [had the jury been fully instructed with respect to conspiracy to commit murder, its guilty verdict would have encompassed the finding that petitioner intended to kill].) The same is true if the jury relied on the aiding and abetting instructions, which required the jury to find that Nguyen acted "with the intent or purpose of committing or encouraging or facilitating the commission of the crime." (*Medrano*, at p. 186 [petitioner ineligible for relief under section 1170.95 where he was convicted of first degree murder under a direct aiding and abetting theory because he knew and shared the murderous intent of the actual perpetrator].)

Nguyen argues that *Medrano* did not consider whether a defendant who conspired to commit murder could still be eligible for relief with respect to nontarget victims. This logic is premised on the distinction between target victims and nontarget victims. Nguyen assumes that if he intended to kill one person, but another person whom he did not intend to kill was killed in furtherance of the conspiracy, the jury could not have convicted him of murdering that other person

10

without imputing malice to him. This misconceives the nature of malice. Express malice does not mean an intent to kill a *specific person*; it is defined as the intent to unlawfully kill *a* person. "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of *a* fellow creature." (§ 188, subd. (a)(1), italics added.) Consistent with this definition, the jury was instructed, "Malice is express when there is manifested an intention unlawfully to kill *a* human being." (Italics added.) Accordingly, liability for express malice murder does not require a finding that the defendant specifically intended to kill the deceased victim(s). "A defendant can be liable for the unlawful killings of both the intended victims and any unintended victims. ' "[T]here is no requirement of an unlawful intent to kill an intended victim. The law speaks in terms of an unlawful intent to kill a person, not the person intended to be killed." ' [Citation.]" (*People v. Concha* (2009) 47 Cal.4th 653, 660 (*Concha*).) [5]

Nguyen further argues the jury instruction defining conspiracy "refers only to a singular first degree murder." We are not persuaded that the wording of the instruction limits the object of the conspiracy to the commission of a single murder; the instruction defined the conspiracy as an agreement "to commit the crime of first degree murder," encompassing the possibility of multiple murders. Regardless, this distinction is irrelevant. Even if a defendant only intends to kill one specific person, the defendant's express malice is not "used up" by a

---

[5] At oral argument, Nguyen argued that the distinction between target victims and nontarget victims with respect to intent to kill is illustrated by *People v. Canizales* (2019) 7 Cal.5th 591. But that case concerned the scope of liability for *attempted* murder. (*Id.* at p. 602.) The mental state required for attempted murder is different from the mental state required for murder itself. (*People v. Shabazz* (2006) 38 Cal.4th 55, 64.) The doctrine of transferred intent, discussed below, does not apply to attempted murder; liability for attempted murder requires the intent to kill the alleged victim, not someone else. (*People v. Souza* (2012) 54 Cal.4th 90, 120.)

11

conviction for the murder of that victim. (*People v. Bland* (2002) 28 Cal.4th 313, 322 (*Bland*) [a person's intent to kill the intended target is not "used up" once it is employed to convict the person of murdering that target].)

These principles of malice are often applied in connection with the doctrine of "transferred intent." "Under the doctrine, if a defendant intended to kill A but inadvertently killed B, the intent to kill A is deemed to transfer to the killing of B, so that the defendant is guilty of B's murder." (*People v. Mumin* (2023) 15 Cal.5th 176, 190.) Consistent with that doctrine, the trial court here instructed the jury, "When one attempts to kill a certain person but by mistake or inadvertence kills a different person, the crime, if any so committed, is the same as though the person originally intended to be killed, had been killed." Although the doctrine of transferred intent is typically applied in the context of a single defendant who is the actual killer, the same definition of express malice supports liability in a conspiracy to commit murder or as a direct aider and abettor to murder. (*Whitson*, *supra*, 79 Cal.App.5th at p. 33, fn. 9 [conspiracy to commit murder may be based on an agreement to kill a human being who is not specifically identified]; *People v. Vasquez* (2016) 246 Cal.App.4th 1019, 1025-1026 (*Vasquez*) [applying doctrine of transferred intent to liability for first degree premeditated murder as a direct aider and abettor].)

In *Vasquez*, defendant Vasquez shot two people, killing one and wounding the other. (*Vasquez*, *supra*, 246 Cal.App.4th at p. 1021.) A second defendant, Bryant, drove Vasquez to the shooting and drove him away afterwards. (*Ibid.*) A jury found Bryant guilty as an aider and abettor of first degree premeditated murder and attempted murder. (*Ibid.*) On appeal, Bryant challenged his conviction for first degree premeditated murder on the ground that the jury could have found him guilty based on an unlawful application of the natural and probable consequences doctrine. (*Id.* at pp. 1023-1024.) The jury was not

12

instructed on a natural and probable consequences theory of aiding and abetting; rather, the jury was instructed on direct aiding and abetting only. (*Id.* at p. 1024.) But Bryant argued that the jury could have found the shooting of the deceased victim was the result of transferred intent and a natural and probable consequence of the shooting of the surviving victim. (*Id.* at p. 1025.) The Court of Appeal rejected this argument, holding that "under the transferred intent doctrine, the intent required for the crime at issue (here, intent to kill for premeditated murder) was already established with respect to Bryant and was transferred to the [deceased victim]." (*Id.* at p. 1026.)

While applications of the doctrine of transferred intent illustrate the definition and application of express malice, we note that the jury here did not need to rely on the transferred intent instruction to convict Nguyen of first degree murder. As a general matter, liability in a conspiracy to commit murder or liability under a direct aiding and abetting theory may be established without express reliance on transferred intent. As explained above, Nguyen's liability for first degree murder as a direct aider and abettor on any count necessarily required a finding of express malice. "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Gentile*, *supra*, 10 Cal.5th at p. 848.) Similarly, Nguyen's liability as a member of a conspiracy to commit first degree murder required the jury to find Nguyen possessed malice aforethought, and his liability for any coconspirators' acts in furtherance followed. (*In re Hardy* (2007) 41 Cal.4th 977, 1025-1026 [each member of the conspiracy is liable for the acts of any of the others in carrying out the common purpose]; *People v. Manson* (1976) 61 Cal.App.3d 102, 159 [conspirator, aider or abettor in murder plot was culpable for all the homicides regardless of who held the weapon].)

13

However, much of the caselaw cited above concerning liability under a conspiracy theory preceded the enactment of Senate Bill 1437, and therefore did not address the question raised here—whether the term "imputed" as used in section 1172.6 and section 188 would preclude relief if the jury convicted Nguyen under a conspiracy theory without finding he specifically intended to kill each of the three victims.

In the context of a petition under section 1172.6, a recent case on point is *People v. Allen* (2023) 97 Cal.App.5th 389 (*Allen*). After a member of Allen's gang was shot, he drove fellow gang members into a rival gang's territory, where his fellow members got out of the car and shot two men, killing one. (*Id.* at p. 392.) Allen was charged with murder and attempted murder. (*Ibid.*) The trial court instructed the jury on liability as a direct aider and abettor, and liability as a member of a conspiracy to commit murder. (*Id.* at pp. 392-393.) Based on CALCRIM No. 417, the trial court instructed the jury that Allen was liable for any coconspirator's act in furtherance of the conspiracy if that act was "a natural and probable consequence of the common plan or design of the conspiracy," even if the act was not intended as part of the original conspiracy. (*Id.* at p. 393.) The jury was not instructed on felony murder or liability for a nontarget offense as a natural and probable consequence of a target offense (CALCRIM No. 403). (*Id.* at p. 394.) Allen was convicted of first degree murder and attempted premeditated murder, and the judgment was affirmed on direct appeal in 2017. (*Ibid.*) In 2021, Allen petitioned for resentencing under section 1172.6, and the trial court denied the petition at the prima facie stage. (*Ibid.*)

The Court of Appeal, Second Appellate District, Division Six, affirmed the denial. (*Allen, supra*, 97 Cal.App.5th at p. 398.) The Court reasoned that if the jury relied on either the aiding and abetting instructions or the conspiracy instructions, the jury did not "impute" malice to Allen because both theories

14

required the jury to find he had the intent to kill.  (*Id.* at pp. 395-396.)  Allen argued the jury could have imputed malice to him because the jury was not instructed it had to find that killing the specific victims was part of the planned conspiracy.  The Court of Appeal rejected this argument based on the principles of malice as set forth above:  " '[T]he "intent to kill need not be directed at a specific person." ' [Citation.] ' "The social harm of murder is the 'killing of a human being by another human being.' " ' [Citation.]  ' "The requisite intent, therefore, is the intent to kill *a*, not a specific, human being." ' [Citation.]  Thus, under current California law, 'conspiracy to commit murder may be based on an agreement to kill " 'a human being' " who is not specifically identified.' [Citation.]  That Allen and his coconspirators did not conspire to kill [the named victims] specifically is not relevant."  (*Id.* at p. 396.)

Nguyen's argument echoes the appellant's claim in *Allen*, and the analysis in *Allen* is on point here.  Application of *Allen*'s reasoning to this case would foreclose relief for Nguyen under section 1172.6.  But *Allen* did not expressly address the scope or meaning of the term "imputed" as used in section 1172.6 and section 188.

That issue was recently addressed by the Court of Appeal, Fifth Appellate District, in the context of transferred intent in *People v. Lopez* (2024) 99 Cal.App.5th 1242 (*Lopez*).  Lopez acted as a lookout for his codefendant Ojeda and helped Ojeda shoot at a van with the intent to kill Ojeda's rival.  The rival was injured nonfatally, but an unintended victim in the van was killed.  (*Id.* at p. 1250.) Lopez was convicted of first degree murder for the unintended deceased victim and premeditated attempted murder for the intended victim.  (*Ibid.*)  The judgment was affirmed on direct appeal in 1998, and Lopez petitioned for resentencing in 2021.  The trial court ruled that Lopez had stated a prima facie case for relief and

15

issued an order to show cause. After an evidentiary hearing, the trial court found Lopez had harbored an intent to kill and the court denied the petition.

The Court of Appeal affirmed the denial on the ground that Senate Bill 1437 did not abrogate the doctrine of transferred intent. (*Lopez*, *supra*, 99 Cal.App.5th at pp. 1249-1250.) The Court rejected Lopez's arguments that transferred intent constitutes a theory of imputed malice similar to liability based on natural and probable consequences. The Court observed that "transferred" intent is not literally transferred; rather, it reflects a policy based on the defendant's culpability for the intent to murder a person. "The transferred intent doctrine does not signify an actual transfer of intent from the intended victim to the unintended victim. [Citation.] Instead, this doctrine expresses a policy 'that a defendant who shoots at an intended victim with intent to kill but misses and hits a bystander instead should be subject to the same criminal liability that would have been imposed had he hit his intended mark. [Citation.]' [Citation.]" (*Id.* at p. 1247.) And because the record showed Lopez had the intent to kill as a direct aider and abettor, the Court concluded he was culpable as a murderer.

With respect to the statutory changes effected by Senate Bill 1437, the *Lopez* Court examined the plain language of section 1172.6 and section 188, and concluded nothing in that language suggested the Legislature intended to abrogate the doctrine of transferred intent. (*Lopez, supra,* 99 Cal.App.5th at p. 1249.) The Court then looked to the common law origins of the doctrine and its continued application after the enactment of the Penal Code in 1872. Under the presumption that the Legislature was aware of the doctrine when it enacted Senate Bill 1437 with no mention of transferred intent, the Court concluded, "we will not presume the Legislature intended to overthrow a long-established principle of law without making its intention clear. [Citation.]" (*Id.* at pp. 1249-1250.)

16

The *Lopez* Court also addressed the California Supreme Court's use of the term "imputed" to describe transferred intent. (*Lopez*, *supra*, 99 Cal.App.5th at p. 1250, citing *Concha*, *supra*, 47 Cal.4th at p. 664.) In *Concha*, the California Supreme Court "Under the 'classic formulation' of the transferred intent doctrine, where a defendant intends to kill a victim but misses and instead kills a bystander, the intent to kill the intended victim is *imputed to the resulting death of the bystander* and the defendant is liable for murder." (*Concha*, *supra*, 47 Cal.4th at p. 664, italics added.) However, the *Lopez* Court declined to rely on this use of "imputed" in construing the language of section 188, subdivision (a)(3) because *Concha* was decided in 2009, long before Senate Bill 1437 took effect, and was " 'not authority for propositions not considered or decided.' [Citation.]" (*Lopez,* at p. 1251.)

We agree with *Lopez* that the California Supreme Court's use of "imputed" to describe transferred intent in *Concha* does not control the meaning of that term as used in the statutory changes enacted by Senate Bill 1437. The *Concha* Court used the term "imputed" long before the Legislature did in Senate Bill 1437, and there is no indication the Legislature intended to use it in the same fashion— particularly since neither Senate Bill 1437 nor the revised statutes use it in any express reference to the doctrine of transferred intent. We further note that the verb "imputed" functions differently in the two sources. In describing transferred intent, *Concha* states the intent to kill is imputed to "the resulting death of the bystander." (*Concha*, *supra*, 47 Cal.4th at p. 664.) By contrast, section 1172.6 and section 188 refer to malice as imputed to a person: "Malice shall not be imputed *to a person* based solely on his or her participation in a crime." (§ 188, subd. (a)(3), italics added.) This suggests we should not assume the Legislature's intent in using "imputed" in Senate Bill 1437 accords with the meaning of

17

"imputed" the Supreme Court had in mind when it used the term in *Concha*—or at least not as it applies to transferred intent.

We rely instead on established principles of statutory construction to determine the meaning of the term "imputed" in sections 1172.6 and 188. When interpreting a statute, we seek to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 849.) We begin with the language of the statute, affording the words their ordinary and usual meaning and viewing them in their statutory context. (*People v. Gonzales* (2018) 6 Cal.5th 44, 49-50.) "The words of a statute must be construed in context, keeping in mind the statutory purpose." (*Id.* at p. 50.) The proper interpretation of a statute is a question of law we review de novo. (*People v. Curiel* (2023) 15 Cal.5th 433, 461 (*Curiel*).)

Dictionaries generally define "impute" in its transitive verb form to mean "to attribute" or "to ascribe." (See Webster's 3d New Internat. Dict., at p. 1139 [defining "impute" as "to attribute accusingly" and "to credit or ascribe to a person or cause"]; Black's Law Dictionary (11th ed. 2019) [defining "impute" as "To ascribe or attribute; to regard (usu. something undesirable) as being done, caused, or possessed by"].) Considered in isolation, the term "imputed" in reference to malice could arguably include attributing to a defendant the intent to kill a person the defendant did not specifically intend to kill. That would conflict with the historical understanding of malice as not being specific to any victim, but arguably the Legislature's use of the term "imputed" could be interpreted as narrowing the scope of that doctrine.

That interpretation, however, would require us to ignore the rest of the language in the statute; any potential ambiguity is dispelled once the term "imputed" is considered in context. Section 1172.6 and section 188 both circumscribe liability for murder based on malice that is "imputed to a person

18

based *solely on his or her participation in a crime*."  (§ 188, subd. (a)(3); § 1172.6, subds. (a) & (a)(1), italics added.)  Whether the jury relied on a theory of conspiracy to commit murder, direct aiding and abetting, transferred intent, or some combination thereof, the jury could not have convicted Nguyen of first degree murder without finding he personally harbored an intent to kill unlawfully.  And while participation in a conspiracy to commit murder constitutes "participation in a crime," a jury can find a defendant harbored express malice without finding the defendant participated in a conspiracy.  Because the jury's finding of malice was not based solely on Nguyen's participation in any crime, the jury did not impute malice to Nguyen in any way that would be impermissible under the plain language of section 1172.6 or section 188.

This interpretation of the statutory language is in accord with the stated purposes of Senate Bill 1437.  A central purpose of Senate Bill 1437 was the reformation of homicide law to ensure it more "fairly addresses the culpability of the individual," reflecting a "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability."  (Senate Bill 1437, § 1, subds. (d) & (e).)  Furthermore, "A person's culpability for murder must be premised upon that person's own actions and subjective mens rea."  (*Id.*, § 1, subd. (d).)  By basing liability on a finding that Nguyen personally harbored an intent to kill unlawfully, this interpretation of the statutory language ensures liability commensurate with his culpability.  (See *Gentile*, *supra*, 10 Cal.5th a p. 847 [the Legislature intended to restrict culpability for murder outside the felony murder rule to persons who personally possess malice aforethought].)  This is also consistent with the scope of liability under a direct aiding and abetting theory.  (See *Curiel, supra*, 15 Cal.5th at pp. 468-469 [aider and abettor liability is premised on the combined acts of all the principals, but on the aider and abettor's own mens rea]; *Vasquez*, *supra*, 246

19

Cal.App.4th at pp. 1025-1026 [holding direct aider and abettor liable for first degree murder of unintended victim].)

For the reasons above, we reject Nguyen's claim that the jury could have relied on the instructions for conspiracy liability to impute malice to him based solely on his participation in a crime. Nguyen asserts no other grounds supporting a prima facie case for relief. We therefore conclude the trial court properly denied Nguyen's petition for failure to make a prima facie case for relief.

### III. DISPOSITION

The trial court's order of May 31, 2022 denying the petition for resentencing is affirmed.

_____
Greenwood, P. J.

WE CONCUR:


_____
Grover, J.




_____
Lie, J.




H050103
People v. Nguyen

|                                                      |                                                       |
|------------------------------------------------------|-------------------------------------------------------|
| Trial Court:                                         | Santa Clara County Superior Court Superior Court No.: 191354 |
| Trial Judge:                                         | The Honorable Jessica M. Delgado                      |
| Attorney for Defendant and Appellant HO THAI NGUYEN: | Brad Kaiserman under appointment by the Court of Appeal for Appellant |
| Attorneys for Plaintiff and Respondent THE PEOPLE:   | Rob Bonta, Attorney General of California             |
|                                                      | Lance E. Winters, Chief Assistant Attorney General    |
|                                                      | Jeffrey M. Laurence, Senior Assistant Attorney General |
|                                                      | Eric D. Share, Supervising Deputy Attorney General    |
|                                                      | Clarissa Limon, Deputy Attorney General               |

H050103
People v. Nguyen