Filed 9/4/24  P. v. Magana CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ROLANDO GUZMAN MAGANA,<br><br>        Defendant and Appellant. | F086224<br><br>(Super. Ct. No. VCF300758A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

This appeal challenges the partial denial of a petition for resentencing under Penal Code section 1172.6.  (All undesignated statutory references are to the Penal Code.)

In 2018, Rolando Guzman Magana (defendant) pleaded no contest to charges of murder and attempted murder. His pleas were entered prior to the enactment of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which amended sections 188 and 189. Those amendments "eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957.)

Senate Bill 1437 also "created a procedural mechanism 'for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief' where the two substantive changes described above affect a defendant's conviction." (*People v. Curiel* (2023) 15 Cal.5th 433, 449.) The process is now set forth in section 1172.6, and it begins with the filing of a petition alleging three prerequisite circumstances. One is that the petitioner "could not presently be convicted of murder … because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) If this allegation is conclusively refuted by the petitioner's record of conviction, the petition can be denied without further proceedings.

Defendant filed a section 1172.6 petition with regard to one count of first degree murder and four counts of attempted murder. The petition was granted as to the attempted murder convictions but denied as to the murder conviction. Regarding the latter, the trial court found defendant did not make a prima facie showing of eligibility because his conviction was based on the provocative act doctrine.

As we will discuss, first degree provocative act murder requires the personal mental state of actual malice. The necessary mens rea was clarified by the California Supreme Court in *People v. Concha* (2009) 47 Cal.4th 653. A conviction of second degree murder under the provocative act doctrine requires at least personal implied malice. Accordingly, it has uniformly been held that post-2009 murder convictions based

2.

on the provocative act doctrine are unaffected by Senate Bill 1437 and thus fall outside the scope of section 1172.6.  Defendant does not disagree.

Defendant seeks reversal due to an alleged possibility the trial court "engaged in inappropriate factfinding" at the prima facie stage, and because it "failed to refer to a specific document in the record of conviction it was relying on."  The trial court was indeed vague in referencing "the case conviction records" while rendering its decision.  However, it had no reason to provide a further explanation because defense counsel expressly *agreed* with its conclusion regarding defendant's ineligibility for resentencing on the murder conviction.

Defendant's claim fails based on principles of waiver and forfeiture, and also failure to affirmatively demonstrate reversible error.  Moreover, the appellate record shows defendant's first degree murder conviction could not have been based on the natural and probable consequences doctrine or the felony-murder rule.  We affirm the challenged ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

### Charges

Defendant and two codefendants (Edgar Picazo and Francisco Manuel Padilla) were jointly charged by information with murder based on the killing of Victor Hernandez DeHaro (§ 187, subd. (a); count 1), and with attempted premeditated murder of J.R. and three other victims (§§ 187, 664; counts 2–5).

Defendant and his codefendants were also charged with discharging a firearm into an inhabited dwelling (§ 246; count 6); attempted home invasion robbery (§§ 211, 213, subd. (a)(1)(A), 664; count 7); assault with a semiautomatic firearm (§ 245, subd. (b); count 8); and first degree burglary (§ 459; count 9).  For sentencing purposes, it was alleged the murder occurred during the commission or attempted commission of robbery

and/or burglary. (§ 190.2, subd. (a)(17)(A), (G).) Gang and firearm enhancement allegations were included in all counts.

The charging document distinguished between personal and vicarious liability for certain firearm enhancements alleged pursuant to section 12022.53. Defendant was alleged to have been an actual shooter in counts 1 and 2. (See *id*., subd. (d); *People v. Garcia* (2002) 28 Cal.4th 1166, 1173.) The codefendants were alleged to be at least vicariously liable under section 12022.53, subdivisions (d) and (e)(1). However, the victim identified in the count 1 firearm enhancement allegation was *not* the person who was murdered, i.e., DeHaro. Instead, defendant was alleged to have caused great bodily injury or death to J.R. (one of the attempted murder victims) by personally and intentionally discharging a handgun in connection with the murder of DeHaro.[1] (See *People v. Laanui* (2021) 59 Cal.App.5th 803, 818 ["Because a section 12022.53 enhancement speaks to the circumstances of a particular count, … it must 'be pleaded in connection with every count as to which it is imposed'"].)

Count 1 further included, as to defendant only, a great bodily injury enhancement under section 12022.7, subdivision (a). Defendant was alleged to have "personally inflicted great bodily injury on J.R., not on an accomplice to the [count 1] offense …." Like section 12022.53, subdivision (d), the statutory language of section 12022.7, subdivision (a) expressly limits its application to a victim "other than an accomplice." The significance of J.R. not being an accomplice will be apparent when we further explain the provocative act doctrine, *post*.

---

[1]The first amended information, which was the operative pleading, alleged great bodily injury "and" death. However, the record clearly shows J.R. did not die. According to J.R.'s own testimony given nine years after the subject incident, he sustained nonlethal injuries from being shot in the chest, left forearm, and right hand.

All crimes were alleged to have occurred in May 2014. The operative first amended information was filed in September 2016.

*Plea Agreement and Sentencing*

A jury trial was scheduled to begin on August 22, 2018. On the first day of trial, defendant and his codefendants entered into a global plea agreement. All parties stipulated to a factual basis for the pleas based on the preliminary hearing transcript and "the police reports."

Defendant pleaded no contest to counts 1 through 5. He admitted the murder "was willful, deliberate, and premeditated." He also admitted the truth of the gang and firearm enhancement allegations. During the proceeding, the prosecutor made the following statement regarding the firearm enhancements: "Just so the record is clear, … the victim being discussed is not the deceased counterpart. The victim is the living homeowner victim, who was not an accomplice."

Under the terms of the plea agreement, counts 6, 7, 8 and 9, as well as the special circumstance allegations for count 1, were to be dismissed at the time of sentencing. The section 12022.7 allegations were stricken as duplicative of elements included in section 12022.53, subdivision (d). The trial court provided an indicated sentence of 25 years to life in prison.

For reasons not fully explained by the current appellate record, sentencing was delayed until May 14, 2019. On that date, defendant was sentenced according to the plea agreement. The trial court imposed a prison sentence of 25 years to life for first degree murder, with punishment for all related enhancements "stayed." Concurrent sentences of 15 years to life were imposed for the four convictions of attempted premeditated murder. The remaining charges were dismissed.

The timing of events raises a question not addressed in the parties' briefing: Was defendant "convicted" within the meaning of section 1172.6 before or after the enactment of Senate Bill 1437? As explained, he pleaded no contest to first degree murder in August 2018, but the pronouncement of judgment did not occur until May 14, 2019—nearly six months after the amendments to sections 188 and 189 had taken effect. Defendant, in his section 1172.6 petition, actually declared he was convicted in 2019. This district has held that persons convicted of murder after Senate Bill 1437's effective date of January 1, 2019, are ineligible for relief under section 1172.6 as a matter of law. (*People v. Reyes* (2023) 97 Cal.App.5th 292, 296, 298–299.) Because we are affirming the trial court's denial of relief on other grounds, it is unnecessary to decide whether the *Reyes* holding would apply in this case.[2]

### Defendant's Direct Appeal

For purposes of explaining the procedural history of this case, we take judicial notice of our records in *People v. Magana* (Oct. 15, 2020, F079496) [nonpub. opn.] (*Magana I*). (Evid. Code, §§ 452, subd. (d), 459; see, e.g., *People v. Putney* (2016) 1 Cal.App.5th 1058, 1063, fn. 4; *People v. Gonzalez* (2006) 138 Cal.App.4th 246, 248, fn. 2.)

---

[2]As a general rule, a defendant is convicted "upon the return of a guilty verdict by the jury or by the entry of a plea admitting guilt." (*People v. Davis* (2010) 185 Cal.App.4th 998, 1001.) However, "[t]he term 'conviction' has no fixed definition and is susceptible to different meanings that must be derived from the surrounding context." (*People v. Kirk* (2006) 141 Cal.App.4th 715, 718; accord, *People v. Woodhead* (1987) 43 Cal.3d 1002, 1008.) Section 1172.6 describes a postsentencing procedure, both in terms of the available relief (resentencing) and by reference to "the court that sentenced the petitioner." (*Id*., subds. (a), (b)(1).) A section 1172.6 petition essentially "supplements a defendant's traditional direct appeal by providing an opportunity to make arguments that did not exist at the time of the appeal, but have arisen since 2019 as a result of recent statutory amendments." (*People v. Burns* (2023) 95 Cal.App.5th 862, 867.) For defendant, the opportunity to make arguments based on Senate Bill 1437 existed before he was sentenced and prior to the filing of his direct appeal (discussed *post*).

The notice of appeal in *Magana I* was filed on June 20, 2019. In other words, nearly seven months after the enactment of Senate Bill 1437. As far as the record shows, defendant never raised any issues concerning Senate Bill 1437, did not otherwise seek to withdraw his plea, and never disputed the factual basis for his plea.

In *Magana I*, defendant alleged a technical and inconsequential error regarding the trial court's description of his punishment for attempted murder. The trial court had imposed concurrent prison terms "of seven years to life, with a minimum parole eligibility of 15 years." Defendant took issue with the words "seven years to life" and argued the correct phrasing was simply "'life'" with a minimum parole ineligibility period of 15 years. Defendant also requested corrections to the abstract of judgment.

The People stated a nonobjection to deleting the "seven years" language from the sentencing minute order and abstract of judgment. The People agreed with defendant's request to further amend the abstract by deleting references to certain inapplicable statutory provisions. This court granted the requested relief. The remittitur in *Magana I* issued on December 15, 2020.

### Defendant's Petition for Resentencing

On January 24, 2023, defendant filed a petition for resentencing. Acting without legal representation, defendant used a preprinted form designed for use in proceedings under former section 1170.95. However, former section 1170.95 was renumbered as section 1172.6, without substantive change, on June 30, 2022. (Stats. 2022, ch. 58, § 10; *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2.) The trial court evidently excused defendant's reliance upon former section 1170.95 and treated the petition as one seeking relief under section 1172.6.

Defendant checked boxes on the form petition to allege (1) the charging document in his case "allowed the prosecution to proceed under a theory of felony murder, murder

7.

under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) he was "convicted of murder, attempted murder, or manslaughter following a trial or [he] accepted a plea offer in lieu of a trial at which [he] could have been convicted of murder or attempted murder"; and (3) "[he] could not presently be convicted of murder or attempted murder because of changes made to … §§ 188 and 189, effective January 1, 2019." (Boldface and underscoring omitted.) Defendant also checked a box to request the appointment of counsel. In a space designated for identifying the year of conviction, defendant wrote "2019."

On May 1, 2023, the People filed a brief entitled, "People's Notice of Ineligibility for Resentencing Per PC § 1172.6." (Some capitalization omitted.) The opposition brief noted, with bolded emphasis, that defendant was convicted of first degree murder based on an admission of willfulness, deliberation, and premeditation. The People further asserted defendant was convicted based on the provocative act doctrine and was therefore ineligible for relief as a matter of law. More specifically, it was argued defendant "cannot seek relief under the felony murder provision of section 1172.6, as his accomplice, Victor Hernandez-DeHaro, was shot and killed during the home invasion by the victim, [J.R.]." The rest of the brief discussed applicable law and summarized evidence from the preliminary hearing. Defendant's eligibility for resentencing on the attempted murder convictions was not addressed.

The appellate record does not contain an order granting defendant's request for the appointment of counsel. However, the proof of service attached to the People's opposition brief shows it was served on the attorney who represented defendant at the prima facie stage of the section 1172.6 proceedings. The defense apparently did not

8.

respond to the People's opposition.[3]  (See § 1172.6, subd. (c) ["The petitioner may file and serve a reply within 30 days after the prosecutor's response is served"].)

On May 4, 2023, the trial court held a joint hearing on both defendant's petition and a section 1172.6 petition filed by a codefendant, Edgar Picazo.  The court began by providing a tentative ruling:

> "I have fully reviewed the case conviction records, as well as the defendants' motions and the People's opposition here.  I'm inclined to deny, finding defendants were convicted of the first degree murder under the Provocative Act Doctrine, which is not applicable to 1172.6.  However, each defendant has several convictions for attempted murder which I do believe they are eligible for."

After making the quoted statements, the trial court invited a response from defendant's attorney.  His counsel said, "Your Honor, I believe that the Court's correct in its analysis as far as it relates to the homicide, as well as the attempted homicide.  I believe that they fall within under [*sic*] 1172.6."  The trial court then asked for input from codefendant Picazo's attorney, who replied, "Your Honor, I agree, as well."

Following the initial remarks of both defense attorneys, the hearing focused on the attempted murder convictions.  There was discussion of a recent section 1172.6 hearing involving the other codefendant, Francisco Manuel Padilla, during which the People had reportedly "elected to dismiss the attempted murders."  The prosecutor said, "Your Honor we are prepared to do that with regards to [Picazo], but not [defendant].  [Defendant] was the actual shooter in the case, and he was convicted of murder with malice aforethought

---

[3]We note the People's opposition was not filed within 60 days of service of defendant's petition as required by section 1172.6, subdivision (c).  However, the deadline "shall be extended for good cause."  (*Ibid*.)  The trial court may have ordered or permitted a different briefing schedule, but the record is silent on this issue.  In the clerk's transcript, defendant's petition is followed by a transport order dated February 2, 2023, which indicates the trial court scheduled a hearing for May 4, 2023.  Next is the People's opposition brief, and then a minute order regarding the proceedings on May 4, 2023.

in the same transaction as the attempted murder, with the additional violations of 12022.53(d)."

During another exchange between the trial court and the prosecutor, the court said, "I'm familiar with the facts, at least generally, that [defendant] was involved with the shoot-out with one of the victims. One of the victims killing one of the defendants. So his conviction for murder was off of that." Defendant's opening brief acknowledges the court was referring to the death of DeHaro and meant that "a victim in the case had killed one of the participants in the robbery[/burglary]." We agree this is the only reasonable interpretation. (Obviously, a person killed during the subject incident could not have later been named a defendant in a criminal prosecution.)

The hearing concluded with the trial court denying defendant's petition as to the murder conviction for failure to make a prima facie showing under section 1172.6. Over the prosecutor's objections, the trial court found a prima facie showing was made as to the attempted murder convictions. An evidentiary hearing was scheduled regarding the attempted murder counts.

Defendant filed a notice of appeal on May 9, 2023. This appeal pertains only to defendant's conviction of first degree murder. No claims have been made regarding the attempted murder convictions.

### Record Augmentations

Defendant and the People both filed unopposed requests to augment the record on appeal. Defendant's motion to augment was filed and granted prior to the submission of his opening brief. A supplemental clerk's transcript was also filed prior to defendant's opening brief. The People's motion to augment was filed with the respondent's brief and was granted prior to the filing of defendant's reply brief.

10.

**Defendant's Augmentation**

As a result of defendant's motion to augment, the appellate record now contains material from the trial court proceedings postdating the partial denial of defendant's section 1172.6 petition.

In July 2023, defendant personally filed a handwritten document entitled, "Petitioner's Brief in Support of Eligibility for Relief as To Count 1, or Request for Reconsideration of Denial." (Some capitalization omitted.) Defendant's filing notably included the following statements regarding his murder conviction: "This incident related to a May 2014 home-invasion robbery involving the death of an accomplice. The deceased accomplice had been inside the house when the victim fired the fatal shots." (Some capitalization omitted.) The trial court later issued a minute order summarily denying defendant's "pro per request."

In August 2023, the trial court held an evidentiary hearing pursuant to section 1172.6, subdivision (d), regarding the attempted murder convictions. J.R. (the victim named in count 2 and in the count 1 firearm enhancement) and two of his siblings testified. The siblings were the people identified as the victims in counts 3 and 4. The lead detective in the underlying criminal investigation also testified. The victim named in count 5 did not testify.

J.R. and his siblings testified to being present during a burglary of their home at approximately 5:00 a.m. on the date in question. J.R. and E.R. both testified to seeing at least two intruders inside the house. The intruders made a loud entrance by "kicking the door down." J.R. was awakened by the sound of glass shattering and armed himself with a pistol after hearing E.R. call out to him.

Once armed, J.R. opened his bedroom door and saw a masked intruder (DeHaro) in front of him. DeHaro was pointing a handgun toward E.R.'s bedroom, which was located across from J.R.'s bedroom. J.R. fired upon DeHaro, who immediately fell to the

11.

ground.  DeHaro's body lay motionless, showing no further signs of life.  J.R. admitted he did not immediately know that DeHaro was dead but became aware of it during the course of the incident.

After shooting DeHaro, J.R. proceeded into E.R.'s room.  E.R. had been "screaming," and upon entering the room J.R. saw that a second intruder (allegedly defendant) "had [E.R.] on the floor."  The second intruder, who also had a gun, turned around to face J.R. and began firing at him.  A gun battle ensued as both men shot at each other until they ran out of ammunition.  Although J.R. sustained multiple gunshot wounds, he temporarily immobilized the second intruder by shooting him in the lower body.  J.R. "pistol-whipped" the man before running back to his room to get another gun.

While retrieving a second weapon, J.R. heard the sound of gunfire coming from outside the residence.  J.R. went to his bedroom window and saw a van parked outside.  He also saw someone shooting at the house.  When things got quiet, J.R. ventured outside and saw that DeHaro's body had been dragged out of the house and left in the driveway.  The van and all other perpetrators were gone.

During the detective's testimony, the People introduced crime scene photographs.  One photo showed "a blood trail or drag marks coming from inside the residence hallway out to the driveway."  Another showed DeHaro's dead body.  Investigators had lifted up DeHaro's shirt for the photo to reveal "a gunshot wound to the left torso."

The trial court ultimately found the People did not meet their burden to show the attempted murder convictions were not based on a theory of imputed malice.  Defendant's petition was therefore granted as to those convictions.  It bears repeating that the partial *granting* of defendant's petition is not at issue in this appeal.  We express no opinion about whether the trial court was correct or incorrect in its decisions regarding counts 2 through 5.

**Supplemental Clerk's Transcript**

The supplemental clerk's transcript contains an amended abstract of judgment dated November 17, 2023. It shows all of the attempted murder convictions were vacated and stricken from the judgment. The current abstract of judgment reflects a conviction of first degree murder with a firearm enhancement under section 12022.53, subdivision (d).

**People's Augmentation**

Because of the People's motion to augment, the appellate record now contains the preliminary hearing transcript. In pertinent part, this transcript shows defendant stipulated to the fact DeHaro died from a gunshot wound. He further stipulated that the bullet "entered [DeHaro's] upper left chest area and exited through his upper right back." All preliminary hearing testimony was given by law enforcement witnesses.

## DISCUSSION

### I.      Standard of Review

The denial of a section 1172.6 petition at the prima facie stage is reviewed de novo. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.) If mistakes were made, they are subject to a harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818. (See *People v. Lewis*, *supra*, 11 Cal.5th at p. 973; *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1239 [trial court's prima facie ruling of ineligibility affirmed despite improper reliance on factual summary in earlier appellate opinion]; *People v. Hurtado* (2023) 89 Cal.App.5th 887, 892 ["a trial court's statutory omissions at the first step of the section 1172.6 process are not state or federal constitutional violations"].) The *Watson* test asks whether it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836.)

### II.     Legal Overview

Murder is the killing of a human being with malice aforethought. (§ 187, subd. (a).) Actual malice and express malice are terms synonymous with the intent to kill.

13.

(§ 188, subd. (a)(1); *People v. Gonzalez* (2012) 54 Cal.4th 643, 653.) Implied malice generally refers to acting with a conscious disregard for a danger to human life. (*People v. Mumin* (2023) 15 Cal.5th 176, 190; see § 188, subd. (a)(2).) "Because malice may be implied, second degree murder does not require a specific intent to kill. To elevate that offense to murder in the first degree on a malice theory, the defendant must act with a specific intent to kill that is formed willfully, deliberately, and with premeditation." (*Mumin*, at p. 190.)

"Under the old felony-murder doctrine, a defendant was liable for first degree murder if their confederate killed someone while they (the defendant) participated in the commission or attempted commission of a qualifying felony. [Citation.] The necessary mental state was simply the intent to commit a qualifying felony…. [P]ut differently, malice was *imputed* to the participant based on their willingness to commit a felony our Legislature deemed '"inherently dangerous to human life."'" (*People v. Lopez* (2023) 88 Cal.App.5th 566, 574.)

"Under the natural and probable consequences doctrine as it existed before Senate Bill 1437, a person could be held liable not only for the crime they intend to commit with their confederate (the target crime), but also for any other offense (nontarget crime)—including murder—'committed by the confederate as a "natural and probable consequence" of the crime originally aided and abetted.'" (*People v. Lopez, supra*, 88 Cal.App.5th at pp. 574–575.) "[T]he necessary mental state was simply the intent to aid and abet an accomplice in the commission of a criminal act that, 'judged objectively,' would 'naturally, probably, and foreseeably result in a murder.' [Citation.] Like the old felony-murder rule, malice was imputed based on the defendant's willingness to participate in a crime." (*Id*. at p. 575.)

Senate Bill 1437 amended section 188 to prohibit the imputation of malice to a defendant "based solely on his or her participation in a crime." (*Id*., subd. (a)(3).) The amendment effectively "barred the use of the natural and probable consequences doctrine to obtain a murder conviction." (*People v. Curiel*, *supra*, 15 Cal.5th at p. 440.) Senate Bill 1437's amendment to section 189 revised the felony-murder rule. Liability under a felony-murder theory is now limited to (1) actual killers; (2) those who acted with express malice in aiding and abetting the commission of first degree murder by the actual killer; and (3) "'major participants in the underlying felony' who 'acted with reckless indifference to human life.'" (*People v. Wilson* (2023) 14 Cal.5th 839, 868–869, quoting § 189, subd. (e)(3).)

### A      The Provocative Act Doctrine

The provocative act doctrine and the felony-murder rule are, and always have been, mutually exclusive theories of murder liability. (See *People v. Washington* (1965) 62 Cal.2d 777, 781.) The latter theory "can be invoked only when the defendant or an accomplice actually commits the killing." (*People v. Concha*, *supra*, 47 Cal.4th at p. 661, fn. 2.) "When someone other than the defendant or an accomplice kills during the commission or attempted commission of a crime, the defendant is not liable under felony-murder principles but may nevertheless be prosecuted for murder under the *provocative act* doctrine." (*People v. Gonzalez*, *supra*, 54 Cal.4th at p. 654.)

"A variation on the law of transferred intent, the provocative act doctrine holds the perpetrator of a violent crime vicariously liable for the killing of an accomplice by a third party, usually the intended victim or a police officer." (*People v. Gonzalez*, *supra*, 54 Cal.4th at p. 654.) This theory of liability "requires proof that the defendant personally harbored the mental state of malice, and either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing."

(*Id*. at p. 655.) "When the defendant or surviving accomplice acts in such a manner and the third party kills in response, the provocateur can be said to have proximately caused the resulting death notwithstanding the intervening use of deadly force by the third party." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 603.) To constitute first degree murder under the provocative act doctrine, the defendant must have "acted with express malice formed after deliberation and premeditation." (*Gonzalez*, at p. 655, fn. 9; accord, *People v. Concha*, *supra*, 47 Cal.4th at p. 662.)

"The classic provocative act scenario occurs when a perpetrator of the underlying crime instigates a gun battle, usually by firing first, and a police officer, or victim of the underlying crime, responds with privileged lethal force by returning fire …." (*People v. Mejia*, *supra*, 211 Cal.App.4th at pp. 602–603.) However, the provocative act doctrine "applies to *any conduct* that is '"fraught with grave and inherent danger to human life"' so as to show a conscious disregard for human life." (*People v. Lima* (2004) 118 Cal.App.4th 259, 266.) "A provocative act is one that goes beyond what is necessary to accomplish an underlying crime and is dangerous to human life because it is highly probable to provoke a deadly response." (*People v. Gonzalez*, *supra*, 54 Cal.4th at p. 655.) Liability cannot rest solely upon the decedent's own actions (*Mejia*, at p. 603, fn. 4), but "[c]ase law establishes that there may be more than one cause prompting an act of lethal resistance—that is, more than one provocative act" (*People v. Briscoe* (2001) 92 Cal.App.4th 568, 586).

The provocative act doctrine and the natural and probable consequences doctrine are also mutually exclusive theories. (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 867; *People v. Swanson* (2020) 57 Cal.App.5th 604, 612–615.) The latter is a theory of aiding and abetting liability for a killing committed by an accomplice, under which the accomplice's malice is imputed to the defendant. In a provocative act murder, the killer

is not an accomplice; nobody is aiding and abetting the killer; and the defendant must personally harbor the mental state of malice.  (*People v. Gonzalez*, *supra*, 54 Cal.4th at p. 655.)

In short, the provocative act doctrine "is the *only* murder theory available when someone other than the defendant or an accomplice kills during the commission or attempted commission of a crime."  (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1168 fn. 1, italics added.)  Because the provocative act doctrine requires a defendant to personally harbor malice, it is unaffected by Senate Bill 1437's amendments to the Penal Code and remains a viable theory of murder liability.  (*People v. Antonelli* (2023) 93 Cal.App.5th 712, 721, rev. granted Oct. 18, 2023, S281599; *People v. Mancilla*, *supra*, 67 Cal.App.5th at pp. 859, 865–870; *People v. Swanson*, *supra*, 57 Cal.App.5th at pp. 608, 613–617; *People v. Johnson* (2020) 57 Cal.App.5th 257, 269.)  Therefore, a defendant convicted of provocative act murder is ineligible for relief under section 1172.6 as a matter of law.[4]  (*Antonelli*, at p. 715.)

---

[4]The California Supreme Court granted review of *People v. Antonelli*, *supra*, 93 Cal.App.5th 712 to determine the following issues:  "(1) Is defendant entitled to resentencing pursuant to … section 1172.6 on the ground that malice could be imputed to the defendant under the provocative act theory of murder for convictions occurring before 2009 (see Sen. Bill No. 775 (2021–2022 Reg. Sess.); *People v. Concha*[, *supra*,] 47 Cal.4th 653)?  (2) Did the trial court err by not considering the jury instructions in determining defendant was ineligible for resentencing as a matter of law for a provocative act murder?"  (Pending Issues Summary, Cal. Supreme Ct. (Aug. 30, 2024) <https://supreme.courts.ca.gov/sites/default/files/supremecourt/default/2024-08/pendingissues-crim%20-%20083024_0.pdf>] [as of Sept. 4, 2024].)  As previously noted, 2009 is the year in which the high court explained, in *Concha*, the mental state required for a first degree murder conviction under the provocative act doctrine.  Because defendant's plea and the underlying incident both postdate *Concha* by several years, it does not appear that the outcome in *Antonelli* will have any impact on this case.

17.

## B.    Section 1172.6

Section 1172.6 governs a process available to defendants who were convicted of murder or attempted murder under a theory invalidated by Senate Bill 1437.  (See § 1172.6, subd. (a).)  Such persons may file a petition for resentencing with the court in which they were convicted.  (*Id*., subd. (b)(1).)  Successful petitioners are entitled to have the "'conviction, and any allegations and enhancements attached to the conviction[,]' vacated and to be 'resentenced on the remaining charges.'"  (*People v. Arellano* (2024) 16 Cal.5th 457, 464.)  "[A] successful petitioner who was charged with murder 'generically, and the target offense was not charged[,]' is entitled to have the murder conviction 'redesignated' as 'the target offense' of the natural and probable consequences theory—or the 'underlying felony' of the felony murder—and to be resentenced accordingly."  (*Ibid*.)

"[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to … Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437."  (*People v. Strong*, *supra*, 13 Cal.5th at p. 708, quoting § 1172.6, subd. (a)(3).)  "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.'"  (*Strong*, at p. 708, quoting § 1172.6, subd. (c).)  The initial assessment occurs during what is commonly known as the prima facie stage.  (See, e.g., *People v. Curiel*, *supra*, 15 Cal.5th at p. 463.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.)  The term "record of conviction" has never been fully defined in this context, but it

includes "the trial evidence, the jury instructions, and closing arguments of counsel." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13.)  If the petitioner was convicted by plea, it would include the charging document, change of plea form, and any facts he or she stipulated to or otherwise admitted were true.  (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211–1212; *People v. Saavedra* (2023) 96 Cal.App.5th 444, 448.)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'  [Citation.]  … [T]he 'prima facie bar was intentionally and correctly set very low.'" (*People v. Lewis*, *supra*, 11 Cal.5th at p. 972.)  "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Id*. at p. 971.)

"At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record." (*People v. Curiel*, *supra*, 15 Cal.5th at p. 463.)  "In the plea context, a petitioner convicted of murder is ineligible for resentencing if the record establishes, as a matter of law, that (1) the complaint, information, or indictment did not allow the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or another theory of imputed malice; (2) *the petitioner was not convicted under such theory*; or (3) the petitioner could presently be convicted of murder or attempted murder under the law as amended by [section 1172.6]." (*People v. Flores* (2022) 76 Cal.App.5th 974, 987, italics added.)

If the trial court's records conclusively establish the petitioner's ineligibility for relief, the court may summarily deny the petition without further proceedings.  (*People v.*

19.

*Strong*, *supra*, 13 Cal.5th at p. 708.) If the petitioner makes the necessary prima facie showing, the court must issue an order to show cause as to why the petition should not be granted. (*Ibid.*) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

There is a split of authority regarding the extent to which a trial court can rely on a preliminary hearing transcript at the prima facie stage. (Compare *People v. Williams* (2024) 103 Cal.App.5th 375, 403–405 with *People v. Mares* (2024) 99 Cal.App.5th 1158, 1166–1169, rev. granted May 1, 2024, S284232, *People v. Pickett* (2023) 93 Cal.App.5th 982, 988–990, rev. granted Oct. 11, 2023, S281643, and *People v. Patton* (2023) 89 Cal.App.5th 649, 657–658, rev. granted June 28, 2023, S279670.) In respondent's brief, the People's arguments are based in part on the holdings of *Patton* and *Pickett*. Because we are able to resolve defendant's appeal without reaching those issues, this opinion takes no position on the split of authority and does not reach the People's arguments regarding *Patton* and *Pickett.*

### C.     Analysis

Defendant attempts to combine two distinct claims, perhaps in an effort to mask flaws in both. In the opening brief, he argues "[t]he statement of reason[s] provided by the trial court … failed to refer to a specific document in the record of conviction it was relying on." The argument continues: "This lack of reference to the actual record of conviction makes it virtually impossible to know what information the trial court actually relied on to deny resentencing relief on the murder conviction." Elsewhere defendant claims the trial court erred by "failing to state what part of the record of conviction it was relying on to support its ruling."

It appears defendant is alleging a failure to comply with the following requirement in section 1172.6, subdivision (c): "If the court declines to make an order to show cause,

it shall provide a statement fully setting forth its reasons for doing so." We reject the assertion of error. The trial court's explanation accurately stated the law in terms of section 1172.6 being inapplicable to provocative act murder convictions. Having "fully reviewed the case conviction records," the court concluded defendant was ineligible for relief on the murder count because he was convicted "under the [p]rovocative [a]ct [d]octrine." When defendant's attorney was asked to respond to this explanation, counsel said, "Your Honor, I believe that the Court's correct in its analysis as far as it relates to the homicide ...."

Later in the hearing, while discussing the attempted murder convictions, the trial court said it was "familiar with the facts" to the extent defendant's murder conviction was based on one of the victims killing one of the perpetrators. The statement was made in the context of explaining to the prosecutor its rationale for finding a prima facie showing was made as to counts 2 through 5. Nevertheless, the court's remarks made clear its reason for denying the petition as to count 1, i.e., first degree murder. Because defense counsel had already expressly agreed with the court's analysis and stood silent after hearing its further explanation, the trial court had no reason to cite specific portions of the record upon which it had relied. Under these circumstances, the court's obligation to "provide a statement fully setting forth its reasons" for denying relief was met. (§ 1172.6, subd. (c).)

Defendant's second claim relies on the false premise that the statement of reasons was "deficient ...in its ... lack of reference to or reliance on any case-specific document in [the] record of conviction." We are being asked to *assume* the trial court "engaged in inappropriate factfinding" based on the *possibility* such an error may have occurred. Defendant argues the court "apparently based its finding on the record in another codefendant's case" simply because proceedings involving codefendant Padilla were

mentioned by the prosecutor and the attorney for codefendant Picazo. This is sheer conjecture. There is no indication the trial court based its ruling on the records in Padilla's case.

Next, defendant points to certain documents in the appellate record that supposedly do not support the court's ruling. For example, he argues "the murder charge was generic and did not allege [a provocative act] theory, nor did [defendant], in pleading no contest to [count 1], admit to engaging in a provocative act murder." In the reply brief, he responds to the People's augmentation of the record by arguing the preliminary hearing transcript is also inconclusive.[5]

Defendant's arguments disregard the fundamental rules of appellate procedure. "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see *Lynch v. Birdwell* (1955) 44 Cal.2d 839, 846, ["Error, it is elementary, will not be presumed in favor of reversing a judgment"].) Trial courts are likewise presumed to have known and followed the relevant law. (*People v. Sullivan* (2007) 151 Cal.App.4th

_____

[5]As previously stated, we are not considering the People's arguments concerning the preliminary hearing transcript. Regarding the charging document, defendant fails to address the naming of J.R. as the firearm enhancement victim in count 1. Defendant does not attempt to explain how a violation of section 12022.53, subdivision (d) could have been pleaded based on the shooting of someone other than the decedent unless the murder charge was based on the provocative act doctrine. Defendant is also mistaken in claiming the special circumstance allegations under section 190.2, subdivision (a)(17) indicated the People "originally intended to pursue conviction under a felony murder theory." Murder liability under the felony-murder rule is possible "only when the defendant or an accomplice actually commits the killing." (*People v. Concha*, *supra*, 47 Cal.4th at p. 661, fn. 2.) The same is not true of the felony-murder provisions of section 190.2. "[B]y its terms, section 190.2 subdivision (a)(17) does not limit the special circumstances it defines to murders based on a 'felony-murder' theory." (*People v. Kainzrants* (1996) 45 Cal.App.4th 1068, 1080; see *id*. at p. 1081 [holding "the fact appellant was convicted of 'provocative act' murder rather than 'felony murder' is irrelevant to whether the murder qualified as a special circumstance murder under section 190.2, subdivision (a)(17)"].)

524, 549–550; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496; see Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].) Here, the trial court's remarks during the hearing generally acknowledged the rules about factfinding: "[A]ppellate courts have become quite strict in determining I can't deny finding a prima facie case unless it is a matter of law."

The People highlight the fact "defense counsel expressly agreed with the court's conclusion that [defendant] was ineligible for relief as a matter of law because the murder [was] a provocative act murder." In his reply brief, defendant mischaracterizes the issue by stating the People have merely noted "defense counsel did not contest the trial court's conclusion." But it was more than a mere failure to argue against the ruling; it was an outright concession. The concession is the very reason why we do not know exactly what part of the record was relied upon by the trial court.

We observe the clerk's transcript in *Magana I* includes, unlike the current appellate record, a copy of the People's trial brief that was served upon defendant a few days prior to his acceptance of the plea agreement. Almost nine pages of the brief are devoted to explaining the provocative act doctrine and its applicability to this case. (Cf. *People v. Lopez, supra*, 78 Cal.App.5th at p. 13 [for purposes of § 1172.6, the record of conviction includes parties' closing arguments]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 [same].) This is not to suggest the trial brief is conclusive proof of defendant's ineligibility under section 1172.6. It only underscores the possibility of the court's records containing a stipulation or other judicial admission that DeHaro was killed by J.R., i.e., someone other than defendant or an accomplice. The same is true of defendant's pro se motion from July 2023 in which he acknowledged the "deceased accomplice" was killed by one of the crime victims.

This case is distinguishable from *People v. Williams*, *supra*, 103 Cal.App.5th 375. In *Williams*, a two-justice majority held a section 1172.6 petitioner need not provide a refutation to the People's opposition at the prima facie stage, even if the opposition relies on "uncontroverted facts presented at a preliminary hearing." (*Williams*, at p. 404 [disagreeing with *People v. Mares*, *supra*, 99 Cal.App.5th at pp. 1163, 1165–1170, rev. granted, and *People v. Pickett*, *supra*, 93 Cal.App.5th at pp. 987, 989–990, rev. granted].) The *Williams* appellant filed a reply to the People's opposition, but it merely "argued that he had pled a prima facie case and was entitled to an evidentiary hearing." (*Williams*, at p. 384.) The *Williams* opinion provides little information about the appellant's prima facie hearing, but it explains the trial court denied the petition in a written decision based on its review of "the complaint, transcripts of the change of plea hearing and preliminary hearing, and the abstract of judgment." (*Ibid*.) The *Williams* majority concluded those items did not adequately support the trial court's ruling. (*Id*. at pp. 387–389.)

In this case, defendant did not respond to the People's opposition. More significantly, at the prima facie hearing, defendant's attorney expressly agreed with the court's analysis regarding his ineligibility for relief as a matter of law. Claims are not waived or forfeited "when a party, while making the appropriate objections, acquiesces in a judicial determination." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212.) But here there was no initial objection. When defense counsel goes beyond merely acquiescing to a ruling and affirmatively embraces or joins in it, the defendant cannot later claim the court erred. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49; *People v. Reynolds* (2010) 181 Cal.App.4th 1402, 1408 ["A party forfeits his or her right to attack error by implicitly agreeing or acquiescing at trial to the procedure objected to on appeal"]; see also *People v. Vance* (2023) 94 Cal.App.5th 706, 713–714 [failure to object to trial court's reliance on inadmissible evidence at § 1172.6 evidentiary hearing

forfeited claim of inadmissibility on appeal]; *People v. Myles* (2021) 69 Cal.App.5th 688, 696 [same].)

Independent of the above analysis, any errors the trial court may have committed were harmless. First, defendant's plea to first degree murder with the admission of willfulness, deliberation, and premeditation is conclusive proof he was not convicted under a natural and probable consequences theory. In *People v. Chiu* (2014) 59 Cal.4th 155, the California Supreme Court held "that a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine." (*Id.* at p. 167.) The *Chiu* opinion was published in June 2014. Defendant's plea was entered in August 2018, more than four months prior to the enactment of Senate Bill 1437. Because the law already prohibited a conviction of first degree premeditated murder under the natural and probable consequences doctrine at the time of defendant's plea, Senate Bill 1437's abrogation of that doctrine could not have affected the validity of his conviction. A section 1172.6 petitioner cannot establish a prima facie case based on a theory of imputed malice that was already prohibited before the enactment of Senate Bill 1437. (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 935–936; *People v. Burns*, *supra*, 95 Cal.App.5th at pp. 867–868; see *People v. Reyes*, *supra*, 97 Cal.App.5th at pp. 298–299.)

Second, the augmented record contains J.R.'s evidentiary hearing testimony regarding his killing of DeHaro. In a murder case where the killer is someone other than the defendant or an accomplice, there are no legally valid theories of imputed malice. If the lethal act was not committed by the defendant or an accomplice, the felony-murder rule does not apply. (*People v. Gonzalez*, *supra*, 54 Cal.4th at p. 654.) The provocative act doctrine "is the only murder theory available." (*People v. Flores*, *supra*, 96 Cal.App.5th at p. 1168, fn. 1.) The law on this issue was already established at the time

of defendant's prosecution and prior to the enactment of Senate Bill 1437. (See *Gonzalez*, at p. 654 ["When someone other than the defendant or an accomplice kills during the commission or attempted commission of a crime, the defendant is not liable under felony-murder principles"]; *People v. Concha*, *supra*, 47 Cal.4th at p. 661, fn. 2 ["the felony-murder rule can be invoked only when the defendant or an accomplice actually commits the killing"].)

**DISPOSITION**

The order denying relief under section 1172.6 as to defendant's conviction of first degree murder is affirmed.


PEÑA, J.

WE CONCUR:


DETJEN, Acting P. J.


SNAUFFER, J.

26.